WILLIAM H. JOHNSON *vs.* CITY OF WORCESTER.

Worcester.    October 5, 1898. — October 20, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, BARKER, & HAMMOND, JJ.

*Personal Injuries — Negligence in Filling and Guarding Trench in Highway — Liability of City — Law and Fact.*

If a depression about two feet wide and three feet long appears in that part of a highway in a city through which a pipe has been laid by its water department, the trench dug for the purpose of laying the pipe having been filled, and there having been an unusual rain storm immediately preceding the accident, and the depression being filled with water, in an action against the city for injuries caused by the depression it cannot be said, as matter of law, that the jury were not warranted in finding that the settling of the earth was due to negligent filling; and it is also a question for the jury whether, if the trench was properly filled, its subsequent defective condition arose during the progress of the work so as to render the city liable for negligence in not guarding the trench.

TORT, for loss of the society and services of the plaintiff's wife, Emily W. Johnson, and for expenses incurred by him by reason of her being thrown from a carriage in which she was travelling on a defective highway in the defendant city, and sustaining personal injuries.

At the trial in the Superior Court, before *Bond,* J., it appeared that the defect was caused by a depression in the street through which a water pipe had been laid; that the trench dug for the purpose of laying the pipe had been filled; that a rain storm of thirty-four hours' duration had immediately preceded the accident, which occurred on October 14, 1895; and that the plaintiff's wife drove into the depression, which was at the lower end

of the refilled trench, about two feet wide and three feet long, and filled with water.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*A. P. Rugg*, for the defendant.

*F. P. Goulding*, (*C. R. Johnson* with him,) for the plaintiff.

HAMMOND, J.    The defendant asked for various rulings, none of which were given in the form presented. All are waived upon the defendant's brief, "except those that go to the essence of the plaintiff's case."

The first contention of the defendant is that there is no evidence to warrant a finding by the jury that the trench was negligently filled; that the burden of proving negligence was on the plaintiff, and that the evidence, taking it most favorably to the plaintiff, left it in doubt whether the settling was not caused by the rain falling upon a trench filled in the most approved manner; that at best it left it in doubt as to which of two different causes, for only one of which the defendant was responsible, led to the accident; and that the jury must have resorted to mere "surmise, conjecture, and suspicion" in order to find for the plaintiff.

Upon looking at the evidence, it appears that the earth was "quite sandy . . . for perhaps a distance of three or four hundred feet." The place of the accident was where by means of a "taper" the connection was made between the twenty-four-inch pipe and the twenty-inch pipe. The two knees which at this point had connected the old cement pipe on the south side of the road were left in the ground; and it does not appear that there was any settling anywhere else on the trench. It is true that Brady, the water commissioner, and Doyle, the foreman, both described the general plan followed in filling the trench, and testified that such a plan was proper, and Allen, the expert engineering witness, testified that the plan was proper and the usual one followed. But the testimony of Brady was that he was at the work "perhaps an hour and a half per day," and Doyle testified that, although he saw the filling going on around the taper and described the method, yet he "was not there during all of the time, but was back and forth." It does not appear that any of the men who actually did the filling were called by the defend-

ant, but it did appear that Leary, the calker who did a part of the work, was dead. There is also other evidence bearing upon the question.

The contention of the defendant was that the trench was properly filled, and that the settling was due to the unusual storm immediately preceding the accident; that the fall of rain was greater than was reasonably to be anticipated, and that the failure to provide against such a storm was consistent with due care in filling the trench.

The contention of the plaintiff was that the storm was reasonably to be anticipated, that the failure to provide against it was negligence, and that, considering the unusual state of things at this point and the whole evidence of the filling, the jury might well find that the most reasonable explanation of the settling was that the trench was not properly filled.

Upon these matters the jury were instructed in a manner not now excepted to, except so far as inconsistent with the request to rule that there was no evidence to show negligence. We cannot say, as matter of law, that the jury were not warranted in finding that the settling was due to negligent filling. The plaintiff was not bound to prove it beyond a doubt, and the jury may have found that to have been the most reasonable explanation. *Griffin* v. *Boston & Albany Railroad,* 148 Mass. 143. *Neveu* v. *Sears,* 155 Mass. 303.

The defendant further contends that the case should not have been submitted to the jury upon the question of negligence in guarding the trench. Upon this branch of the case the contention of the defendant is that prior to the time of the accident it had ceased to work as a water pipe layer at the place of the accident, and that, if due care was exercised in filling the trench, it had performed its whole duty as such pipe layer; that the highway some days before had been open to public travel; that for the subsequent settling the only liability of the defendant was its statute liability for defects within its highways, and that there was no evidence to show that the place needed or was receiving any further attention from the defendant as such pipe layer at the time of the accident.

The plaintiff contends to the contrary.

As to this it is settled that, if in the progress of the work there is negligence in guarding the trench in the highway, the defend-

ant may be held liable at common law. *Fox* v. *Chelsea*, 171 Mass. 297.

The real question on this branch of the case is whether, assuming the trench to have been properly filled, the subsequent defective condition of the trench arose during the progress of the work. On this point it appeared that there was a superintendent of streets having general oversight of the streets and charged with the duty of keeping them in proper condition, and that there is an ordinance of the defendant which, so far as material, is as follows: "The water commissioner shall have the care and control of all ponds, streams, waters, reservoirs, aqueducts, and other property acquired or held by the city for the purpose of obtaining or furnishing a supply of pure water for the use of its inhabitants; shall maintain the same in good order and condition; shall use and operate the same and furnish all supplies required therefor; shall take all measures necessary to protect and preserve the purity of all waters; shall purchase, lay, and maintain all pipes, conduits, and other fixtures and appliances necessary for obtaining or supplying water for the inhabitants of the city." There was evidence tending to show that the water department were engaged that fall in laying a water pipe in Main Street, beginning forty feet westerly of Winchester Avenue, and running westerly 8,600 feet to and into the town of Leicester; that they began at the easterly end near the avenue and laid 2,000 feet westerly therefrom to Hunt's Corner; that before the accident this entire trench of 2,000 feet was filled, and the street was opened for travel, and was actually used by the public for all this time; that the condition of this portion of the way was described by witnesses as level, except that the part over the trench was rounded up somewhat, and that no guard was placed upon the trench or care taken of it thereafter until the rain came; and that the water department immediately after closing this trench began laying pipes in the town of Leicester, beginning about 2,000 feet beyond Hunt's Corner. Brady, the water commissioner, testified: "We laid about two thousand feet and then skipped and went farther west. The two thousand feet from Winchester Avenue would take up to about Hunt's Corner. We began to lay this two thousand feet early in September. We began about forty feet west of the west line of Winchester Avenue to lay. From that point towards the city there was a twenty-

inch pipe to this side of Gates Lane. At some time before, we had laid a cast iron pipe to about forty feet west of the west line of Winchester Avenue, and then we continued that twenty-four-inch pipe along up towards Leicester. We connected it with what we call a 'taper.' It is made one end smaller, and the taper is about three feet long, and the difference between a twenty-four-inch and twenty-inch was in that three feet, or about three feet, I do not remember the exact length. We commenced at this point, forty feet west of Winchester Avenue, and excavated on the north side of the street for this twenty-four-inch pipe, and we laid to a point near Hunt's Corner where this cement pipe was on the north side, and then we connected both ends. When we had completed laying this twenty-four-inch pipe of this strip of two thousand feet we disconnected this cement pipe, and then we came back and filled this place. We made an excavation about four feet wide on top and six feet deep, and perhaps a foot narrower at the bottom than at the top. We laid this two thousand feet, with the exception of twenty-five or thirty feet at the east and west end, and then we connected the two ends." He further testified that after the accident the water department made the repairs. During the rain storm and after it, up to the time of the accident, the defective spot was cared for only by the water department.

There was some conflict as to when, with reference to the accident, the trench was dug and filled.

One Clark, for the plaintiff, testified, " I should think the trench was dug about two weeks before, or within two weeks.'

One Brady, for the defendant, says, " We began to lay this two thousand feet early in September "; but on cross-examination he says, "I do not state exactly whether we began there the latter part of September or three weeks before the 14th of October."

Upon the whole evidence, it was a question for the jury whether that part of the work was still in the charge of the water department as a part of the original work; and this question having been submitted to the jury upon instructions not now excepted to, except so far as inconsistent with the request that the plaintiff is not entitled to a verdict upon the evidence, the exceptions must be                                        *Overruled.*