82   583
e87   700

## SARAH ANN CARVER *v.* CITY OF JACKSON.

1. MUNICIPALITIES. *Defects in streets. Notice.*

   A municipality may have such constructive or implied notice of defects in its streets as to render it liable for damages resulting therefrom.

2. SAME. *Defects created by the municipality itself. Ordinary care.*

   Where defects in a street were created by the municipality itself in the prosecution of a public work, and ordinary care would have discovered them, it is chargeable with notice of them.

3. EXCESSIVE VERDICT.

   A verdict for four thousand dollars against a city in favor of a professional midwife and nurse, sixty-three years of age, for falling into a sewer ditch because of a defective temporary bridge, is excessive, in the absence of satisfactory evidence as to the extent and duration of her injuries.

FROM the circuit court of, first district, Hinds county.

HON. ROBERT POWELL, Judge.

Mrs. Carver, appellee, was plaintiff, and the city of Jackson, appellant, defendant, in the court below. From a judgment in plaintiff's favor defendant appealed to the supreme court. The facts are sufficiently stated in the opinion of the court.

*McWillie & Thompson,* for appellant.

The declaration alleges that the crossing "appeared to be safe," and the evidence for the plaintiff is that it appeared to be safe. Both the plaintiff and her companion, Mr. Porter, when they saw it and considered it safe, had the benefit of the light of day.

The defendant had fixed the crossing so as to be safe in the opinion of the servants of the city who arranged it and who

could only say whether or not it was safe from its appearance, and their affirmative conclusion was justified by that of the plaintiff and her companion.

A municipality is not an insurer of the safety of such crossings, and that all reasonable precautions had been taken by the defendant's servants is shown by the most indisputable evidence.

Had a special verdict on this question been allowable, we do not see how any member of the jury could have so stultified himself as to declare that the servants of defendant who fixed the crossing might not have reasonably concluded that the crossing was safe as arranged, and we venture the assertion that every member of this court has safely passed over hundreds of crossings that presented no greater appearance of safety.

To allow a verdict for damages to stand upon nothing more than appears in this record would be equivalent to dispensing with evidence and leaving the issue to the partial feelings, whims and prejudices of the jury. We know the disinclination of appellate courts to determine a question of fact contrary to the verdict of a jury, but when the jury have ignored the indisputable facts, the party prejudiced by their action has a right to have their verdict set aside. He has no other recourse than to appeal for relief against a verdict unwarranted by the evidence. The appellate court is not bound by any determination of fact which is clearly erroneous.

The plaintiff's second instruction submits to the jury the question of whether or not the planks were so arranged that the earth under them was "liable" to cave, etc. We object most earnestly to the use of the word "liable," as employed in this instruction. Any earth anywhere is liable to cave under certain circumstances in the ordinary use of pedestrians, as from undermining and disintegration caused by flowing water, etc. Moreover, the liability to cave, if considered at all, should have been such as resulted from its proper use.

The verdict of the jury was excessive. The plaintiff says

she had her arm broken and her ribs broken and was sick after-
wards with hemorrhage of the bowels, had lost her strength, etc.
We ask the court to note that she says that all signs of these
broken bones had disappeared; that she went on to the depot
and proceeded to Flora on the morning of the accident; that
she did not go to bed after she got there; that she never received
the attention of a physician, and that after a short stay in
Flora she went down into the country some eight miles in a
buggy, where she stayed for awhile, her subsequent movements
being undisclosed, but doubtless evincing the same activity.

*Alexander & Alexander* and *H. B. Greaves,* for appellee.

The law of this case as announced in plaintiff's instructions
is simple and elementary. Plaintiff's instructions as drawn
are substantially copies of instructions already approved by this
court in *Nesbitt* v. *Greenville,* 69 Miss., 22, and in the unre-
ported cases of *Gibson* v. *City of Jackson* and of *City of Jack-
son* v. *Brown,* both decided within the last few years, in which
the law of the cases announced in instructions similar to
these were held so elementary that the cases were not even
reported.

As to the general rules of law applicable, see also Elliott on
Roads and Streets, pp. 447, 455, and as to the duty to antici-
pate defects and make reasonable inspection, *Ib.,* sec. 462; and
on the point of notice to the road commissioner, or road overseer
or person in charge of the work, or notice to the city, sections
463, 464. The fact that the sewerage work was necessary does
not relieve the city of the obligation to keep the streets safe, and
to protect pedestrians. *Ib.,* 365, 458. We call the court's
attention to *Stainback* v. *Meridian,* 79 Miss., 447, where the
principles of law announced in plaintiff's instructions were
sustained and the judgment for plaintiff was reversed solely
because the bridge was not fit for public use, and the plaintiff
ignored the barricades erected by the city as warning.

As to the damage being excessive, we hardly think appellant's counsel will seriously press this point. It is hardly supposable that a jury in Jackson would give a nonresident excessive damages against their own city. Surely we would not expect to find any prejudice in a case like this. The evidence, however, shows that the verdict was very moderate. Mrs. Carver was sixty-three years of age, and for twenty-seven years had made her own living as a professional nurse. She was strong and well and had enjoyed perfect health all her life. She fell a distance of five feet, and was struck in the side by one of the planks, and as it afterwards developed, two of her ribs were broken, and as a result of this, or of the shock, internal hemorrhages set in and have continued ever since, thus bringing upon her a painful, alarming and loathsome disease. Her expectancy of life was ten or twelve years, and if we look only to the support which has been taken from her, the verdict would be sustained. But when we consider the pains she endured, the lingering illness which has been entailed upon her and her being dependent upon the charity of her friends and relatives, we surely think a court would be going far beyond all precedent and the rules of law in setting up its judgment in lieu of that of the jurors. They saw Mrs. Carver, they heard her testimony, and were in a better position to judge as to the extent of her injuries. Moreover, the circuit judge saw her and heard the testimony, and declined to disturb the finding of the jury.

It is true that Mrs. Carver did not for some weeks get any medical aid. She says she did not appreciate herself the extent of her injuries, and while she could not lie down but had to sit up all the time, she hoped to recover. The lady who kindly cared for her at Flora testified to the suffering that she had endured there, and the gentleman to whose home she went in the country testified to frequently hearing her groaning in the night, and being at last convinced of the alarming condition she was in, they sent for a physician, but owing to the unprece-

dented rains they were unable to secure him.    All of this testimony, however, was before the jury and the judge, and we have no fear that this court will find the slightest fact in evidence that will warrant them in saying that the jury and the court below were moved with passion and prejudice to the extent of giving an unwarranted verdict.    A verdict for a much larger amount would have been sustained.

TRULY, J., delivered the opinion of the court.

This is a suit for damages for personal injuries said to have been incurred by reason of the negligence of the city of Jackson on account of a defective bridge — a crossing upon a public street of said city.    The principles of law governing such cases in this state are plain, simple, and free from doubt.    We quote, to approve and indorse, the language of this court in the case of *Nesbitt* v. *City of Greenville,* 69 Miss., 22, 10 South., 452, 30 Am. St. Rep., 521: "Ordinary care over its streets is the measure of diligence imposed upon municipal corporations, and they are not insurers against injury to persons using the public streets.    We do not dissent from the elementary principle that, before the municipality can be held liable for injuries resulting from nuisances or defects in its streets, it must have knowledge of the nuisance or defect, and its danger.    Notice there must be, to charge the municipality, but this notice may be actual or constructive or implied.    Where the obstruction is created by the city itself, or where it permits an obstruction erected by another in its streets, it must take notice of such defects in the obstruction as ordinary care will discover.    The structure in a street, to every part of which the public has the right of free access, must be erected in such manner and from such materials as to be reasonably safe, and it must be kept in this safe condition.    Proper repairs, from time to time, are as much the duty of the city as a safe structure originally.    Inseparably connected with this statement is another, viz.: that a municipality

is liable for injury resulting from its defective structures, where by reasonable diligence it might have acquired knowledge of such defect.     The common knowledge of mankind is chargeable to a municipality also.     The knowledge of the action of the elements on structures of wood, and of the liability of timber to decay under certain conditions, is to be attributed to municipalities, just as to natural persons.     The duty of the municipality to exercise ordinary care to detect such natural ·decay, and to guard against injuries therefrom, follows necessarily." And in the case of *Stainback* v. *City of Meridian,* 79 Miss., 447, 28 South., 947, 30 South., 607, on first appeal, it is announced: "It is actionable negligence for a city to remove a bridge over a ditch in a densely populated district, and provide and maintain, for the passage of pedestrians over the same, insecure planks, which careened when plaintiff, an infant, went upon them, causing her to fall and suffer injury, she being wholly without fault or knowledge of the insecurity of the plank passageway so provided for the use of herself and others by the city."

In the case at bar the foregoing propositions of law were correctly announced by the court in its instructions for plaintiff and defendant.     In the light of the evidence in this case, we do not think that the instructions for plaintiff are open to the criticism of counsel for appellant.     The facts, as developed upon the trial, show that on Sunday morning, December 23, 1900, the appellee, with two others, in the lawful and usual use of the streets, while on her way to the depot in the city, walking down the said walk in the manner usual for pedestrians, came to the bridge at which the injury is said to have occurred.     One of her companions crossed in safety, but while the appellee was still on the crossing the other of her companions stepped on the plank, and their combined weight caused the plant to give way, and the bank of the ditch over which the plank was laid to cave, so that appellee was turned into the

ditch, struck by one of the planks, and, as she avers, severely injured.    It appears that the city of Jackson was engaged in installing a municipal sewerage system, and in the prosecution of this work it became necessary to dig trenches over all of the streets where the sewer pipes were to be placed.    At night it was the custom, wherever one of these ditches or trenches crossed a public sidewalk, to erect a temporary bridge or crossing for the use of pedestrians.    These temporary bridges were built by placing upon the ground three or four planks, side by side.    At the particular bridge where the injury is said to have happened, this was the manner in which the crossing was built. It is in testimony that at this particular place the ground was not level, one bank of the trench being somewhat higher than the other.    It is also in evidence that at this particular place the surface of the ground was covered with a layer of cinders, which, according to the testimony of some of the witnesses, rendered the bank more liable to cave.    It seems that there was no effort made to fasten the planks in any way.    They were simply placed upon the ground.    No effort was made to dig a bed for the ends of the planks, or to level the opposite banks of the trench so that the planks might lie smoothly.    There was considerable testimony as to the caving of the banks of these sewer trenches in various parts of the city, one witness testifying that at the place of the alleged accident the banks had caved until the trench was nearly or quite twice as wide as when built.    It is further in testimony that at this particular crossing the planks only reached from six to eight inches on each side of the trench; that they could be moved without any trouble; that a citizen living near the crossing had complained of the dangerous condition of the crossing to the foreman of the crew working in that section of the city.    These facts, or many of them, were controverted by witnesses for the appellant; but the issue of fact was fully presented to the jury, and by the jury decided adversely to the appellant.    We are not prepared to say that

the verdict is not supported by the testimony.　True it is that the courts have said that notice must be shown to have reached the municipality, but in the case at bar there is not an absence of proof that direct complaint was made to the city, and it was for the jury to pass upon the credibility of this witness.　But aside from the testimony of the actual notice to the city, was it not charged, under the law, as stated in the *Nesbitt Case, supra,* to use ordinary diligence in ascertaining for itself the condition of the crossing?　It was said in the *Nesbitt Case* that "the knowledge of the action of the elements on structures of wood, and of the liability of timber to decay under certain conditions, is to be attributed to municipalities just as to natural persons."　In this case is not knowledge of the action of elements on the banks of trenches to be attributed to the municipality?　Is it not chargeable with the knowledge that continued rains will render the perpendicular banks of a trench liable to cave; that planks unfastened, lying loose upon the uneven surface of the ground, are liable to slip or give way under pedestrians who by the action of the city are invited to use such crossings?　We think the same rule applies.　It is in testimony here by the appellant's witnesses that many persons daily crossed at this place in safety.　Under the rule in the *Stainback Case,* above cited, was it not negligence in the city to allow this condition to exist without using ordinary prudence in maintaining the safety of the crossing?　We think the testimony fully warrants the verdict of the jury for the appellee.

The jury assessed damages in the sum of $4,000.　The plaintiff was an old lady, sixty-three years of age, at the date of the injury.　She had been making her living as a nurse.　Her testimony, and all of the testimony for appellee, as to the extent and duration of her injuries, is vague and uncertain.　From a careful consideration of this record, we are forced to the conclusion that the jury allowed a feeling of sympathy for an aged and dependent woman to lead them into awarding more than

the strictly compensatory damages which the law warrants. From the facts before us, without intending to establish any precedent, but looking only to the facts of this particular case, we think the verdict was excessive.

Wherefore, if the appellee will enter a *remittitur* for $2,000, the judgment will be affirmed; otherwise reversed and remanded.