[Civil No. 2224.  Filed May 26, 1925.]

[237 Pac. 168.]

# CITY OF PHOENIX, a Municipal Corporation, Appellant, v. JESSIE CLEM, Appellee.

1. MUNICIPAL CORPORATIONS—EVIDENCE HELD SUFFICIENT TO SUPPORT FINDING PLAINTIFF WAS INJURED WHEN TAXICAB RAN INTO HOLE IN TRENCH IN STREET.—Evidence *held* sufficient to support finding of jury that plaintiff was injured when taxicab, in which she was a passenger, ran into hole in trench in street.

2. APPEAL AND ERROR—VERDICT SUPPORTED BY COMPETENT EVIDENCE NOT DISTURBED.—Where there is competent evidence reasonably tending to support verdict, and where trial court has overruled motion for new trial, rule is not to disturb verdict.

3. MUNICIPAL CORPORATIONS—ORDINARY CARE REQUIRED OF MUNICIPALITY.—Standard of care imposed on a municipality is that of an ordinarily prudent man, and it is bound to keep its streets reasonably safe for travel, but is not insurer of travelers thereon.

4. MUNICIPAL CORPORATIONS—WHEN WORK IS DONE IN CUSTOMARY WAY, RULE OF REASONABLE CARE CONFORMED TO.—Generally, where particular kind or class of work by city in maintaining streets is done in the usual and customary way, rule of reasonable care is conformed to.

5. MUNICIPAL CORPORATIONS—NOTICE OF DEFECT ELEMENT OF NEGLIGENCE.—Where city improvement is not defective when made, but later becomes so, city must have actual notice of defect, or defect must have existed sufficient length of time to imply notice before it is guilty of actionable negligence.

6. MUNICIPAL CORPORATIONS—CITY, IN MAKING IMPROVEMENTS, MUST GUARD PUBLIC.—A city, in making street improvements, must take steps to guard the public against dangers incident thereto.

7. MUNICIPAL CORPORATIONS—CITY, NOT HAVING NOTICE OF DEFECT IN STREET DUE TO SETTLING, HELD NOT LIABLE FOR INJURIES.—Where trench in a public street had been back-filled in usual way, so as to be safe for use by the public, and city had no knowledge of hole therein, due to rains causing settling, and hole had not ex-

---

3.  See 13 R. C. L. 351.

5.  See 13 R. C. L. 337.

6.  Injury pending repair of street, see note in 20 L. R. A. (N. S.) 603.  See, also, 13 R. C. L. 359.

isted long enough to give city constructive notice thereof, it was not liable for personal injuries caused when taxicab struck hole and injured occupant thereof.

See (1) 28 Cyc., p. 1494, n. 89.    (2) 4 C. J., p. 864, n. 34.    (3) 28 Cyc., p. 1359, n. 49.    (4) 28 Cyc., p. 1363, n. 67 (New).    (5) 28 Cyc., p. 1384, n. 99.    (6) 28 Cyc., p. 1402, n. 46.    (7) 28 Cyc., p. 1393, n. 20, p. 1394, n. 21, p. 1402, n. 45.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Judgment reversed and cause remanded with instructions to dismiss complaint.

Mr. W. L. Barnum, Mr. E. J. Flanigan, and Mr. J. E. Nelson, for Appellant.

Messrs. Jennings & Strouse, for Appellee.

ROSS, J.—Jessie Clem, appellee, brought this action against the city of Phoenix, for damages for personal injuries, alleging that on January 2, 1922, while the defendant was constructing a water-main at the intersection of Ninth Avenue and Washington Street "a portion of the trench . . . was . . . left . . . in an uncovered condition, leaving a large hole in said street, and that said city . . . failed and refused to provide or to station a light at said hole, or to give notice of danger to the public and to vehicles passing along said street, of the said uncovered ditch or trench," and that, while she was traveling in an automobile along Washington Street at Ninth Avenue, at about 8 o'clock in the evening, the machine struck said hole, so left unguarded and uncovered, whereby she was injured, etc.

Defendant for answer pleaded (1) the general issue; (2) that plaintiff had in another action for the same tort recovered judgment for $12,000 against the White Line Taxi, Inc., which judgment had been settled and satisfied; and (3) that, prior to January 2, 1922, the defendant city had caused to be dug a ditch along West Washington Street, from

Seventh Avenue to Ninth Avenue, for the purpose of laying city water-mains therein; that on or about December 13, 1921, said ditch had been back-filled with dirt taken therefrom, in a proper and workmanlike manner, and with due regard for the safety of the travelers on said street; that the street along said work, on the night of January 2d, was properly guarded by warning lights, and that, if the driver of car in which plaintiff was riding had used ordinary care and caution plaintiff would have sustained no injury; that said excavation very shortly prior to the time when plaintiff sustained injuries was level with the remainder of the street and open to, and had been used by, the public for public travel in the ordinary modes, and was safe for such use; that, due to a heavy fall of rain previous to the alleged injury, said excavation had settled a few inches, but not so far as to become unsafe for public travel by any person using due care and caution in traveling over or upon the same; that the ditch or excavation was fully filled in a proper and safe manner, and defendant had no notice from any source that the fill had settled or that there was any depression of any kind on said avenue or street.

The case was tried to a jury, and resulted in a verdict and judgment for $5,000. Defendant appeals.

There is no dispute about the evidence, but there is a dispute as to what, if anything, it proves or establishes. The errors assigned are based upon the court's refusal to instruct a verdict for defendant at the close of the whole case, and upon a refusal of certain instructions, and it therefore becomes necessary to state briefly the evidence.

The early part of December, 1921, the city, for the purpose of laying therein water-mains caused to be dug, by an independent contractor, a trench about forty-two inches wide and about four feet and four inches deep, along the north side of West Washington Street, between a point beginning about twenty-six

feet west of the intersection of Ninth Avenue and Washington Street and extending to Seventh Avenue. After the mains were placed in trench, it was filled and back-filled with the earth taken therefrom, and the portion of the street occupied by it reopened to traffic about December 15th. The manner of refilling was the usual and customary one, and consisted of putting in earth within a foot of surface and then back-settling with water. After it was back-settled, or puddled, it was protected by barriers until the earth dried out, and then fully filled up and rounded over trench, in accordance with specifications. The trench was between the street railway track, located near the center of street, and the north curb and in that portion of the street used by the traveling public. After street was opened to traffic it was watched closely to see that it was in condition, and if any holes appeared the city employees filled them up. The city engineer went over the part of the street where accident happened that evening (but he does not say how late), and states "the condition of the surface of the street at the point where pavement had been cut was good on the night of January 2d." The employees of the city in charge of the improvement knew that a trench filled and back-filled as this one was, when subjected to heavy rains, was apt to sink below the surrounding and adjacent pavement.

About 8 o'clock in the evening, the plaintiff took a taxi at Third Avenue and Washington Street to go to her home on Hadley Street, and went west on Washington, traveling on the north side of street out of Seventh Avenue, where, because a light indicated some work on that side of street, it went to the south side, and proceeded on the south side to the intersection of Ninth Avenue, where it recrossed to the north side, and, in the words of plaintiff, after machine had crossed the street railway track, "ran into a hole in the pavement, and I was hurt." The following morning, at 7 o'clock, "the dirt in the excavation had

sunk from six inches to eight inches below the pavement'' and there was ''one automobile track in the hole.'' It had been raining for two days prior to the accident. The time and fact was fixed by witnesses because on January 3d, or the day following the accident, there was another ''Cave Creek flood.''

The defendant insists the court erred in refusing to grant its motion for an instructed verdict upon the following three grounds: (a) Because the evidence failed to establish plaintiff had suffered injury by automobile coming in contact with the hole in trench; (b) because it appeared from the testimony of plaintiff that she was injured by the jolting of automobile on street railway track; and (c) because ''the testimony is uncontroverted to the effect that the defendant had made the place in question reasonably safe for public travel for some time prior to the injury to plaintiff, and that it had no notice of such defect at any time prior to such occurrence, and certainly not in time to have repaired the same.''

Covering points (a) and (b), we will say the evidence was not as full and complete as it might be. Indeed, it was very meager, consisting of the statement of plaintiff that she was hurt by machine running into hole in trench, and the corroborative telltale tracks of the machine found in hole early the following morning. The jury were satisfied that plaintiff was hurt at the place claimed, and we think they had enough evidence before them to support such finding. Every circumstance points to its correctness. Defendant rather ingeniously argues that, because plaintiff stated she was jolted when automobile passed over street railway track, it was then she was hurt, but the jury evidently thought otherwise, and a fair construction of her whole testimony on that point sustains the conclusion that the injury was due to the automobile coming in contact with the hole in trench. Where there is competent evidence reasonably tending to support the verdict, and es-

pecially where the trial court has overruled the motion for a new trial, the rule is not to disturb the verdict. *Southwest Hay & Grain Co.* v. *Sherer,* 21 Ariz. 166, 185 Pac. 820; *Southern Pacific Co.* v. *Thomas,* 21 Ariz. 355, 188 Pac. 268; *Durazo* v. *Ayers,* 21 Ariz. 373, 188 Pac. 868.

The next point (c) is not so easily disposed of. It involves defendant's right to notice of defect. The trial court adopted the theory of plaintiff, that the defect was of such a character as to imply notice, and this theory of the law the city combated below and is combating here.

The acts of negligence charged against defendant are (1) that it left a portion of the trench in an uncovered condition, leaving a large hole in street; and (2) it failed and refused to provide light at said hole, or to give notice of danger to the public or vehicles of the uncovered trench.

It must be conceded that the city not only had the right, but owed the duty, to make needed improvements of its water and sewer systems and to that end could itself, or through others, lawfully enter upon its streets and do all things necessary to accomplish that purpose. The defendant was therefore acting within its rights when it caused the trench to be made and the water-mains to be laid therein. While such improvement was being made, the city owed a duty of placing barriers, signs, or lights around, over, and near the excavation as a warning to the public of danger, and a failure to do so would constitute actionable negligence. *Pine Bluff Natural Gas Co.* v. *Senyard,* 108 Ark. 229, 25 A. L. R. 419, and note, 158 S. W. 1091. The negligence charged in complaint did not occur in the progress of the improvement, but after the trench had been filled and back-filled and rounded over in the usual way. It is not negligence in doing this work that is charged against defendant, nor is there any testimony that it was not done in a reasonably safe and workmanlike manner. The

charge is that defendant left a large hole in trench, unprotected by a light or any notice of danger. The uncontradicted evidence is that the portion of Washington Street in which trench was made had been opened up to the public and used by travelers for some fifteen or more days before the accident occurred, and that defendant's agents and officers had during that time kept a close lookout for holes in trench, filling them as often as any appeared. The city engineer testified "that the condition of the surface of the street at the point where the pavement had been cut was good on the night of January 2d." While the complaint charges that defendant left a large hole in street, the evidence shows that the street's condition was good at nightfall, or at least it fails to show there was a hole in trench during January 2d until about 8 o'clock in the evening, when the accident occurred. So, if the complaint be construed as charging defendant with having left a hole in street, unprotected by a light or warning notice, it has no supporting evidence, as, if there was a hole before the accident, defendant did not know it.

But, giving the complaint the broader meaning of charging a duty on the part of the defendant city of placing barriers over trench or stationing lights or notices along it as warning to the public, even after the street had been opened to travel, and we think it may reasonably bear such construction, the question is whether such a duty, it being conceded that the trench was not defective or improperly constructed or filled, is by the law imposed upon defendant. Clearly, as an abstract proposition, there would be no such duty. And if any known causes were in operation to produce defects in the street, such as heavy and continuous rains, imposing greater diligence on defendant than when conditions were normal, we think those facts should not only have been alleged but proved. But, overlooking the omission in complaint to allege

28 Ariz.—21

that natural causes were in operation likely to cause the trench to become dangerous, and treating such allegation after trial as supplied by the evidence, the question is, Was it actionable negligence for the defendant to fail to warn plaintiff, by signs or lights, of the existence of the trench and its possible shrinkage because of the rain, in the absence of any knowledge that it had shrunk or become defective? It is the contention of plaintiff that the city, "by reason of ordering or doing the work itself by its own agents or through a contractor, brought about the defective condition by its own acts and is chargeable with notice." Of course, if no improvement had been made and no trench dug, the hole complained of would not have formed. And it is equally clear that no hole would have formed except for the rain. In other words, it is conclusively shown that the safety of street for traveling had not been impaired by the improvement itself, and that it was not impaired by the way in which the work was done, but that the danger arose from causes over which the city had no control.

The plaintiff's contention amounts to this: Where a condition in a municipality's streets exists which is perfectly safe in normal weather, but which the city knows may become dangerous when subjected to heavy rains, there is a positive and primary duty owing the users of such streets, when the weather becomes abnormally wet, to place warning signals along those portions of the streets that might be dangerously affected thereby. The plaintiff supports her contention by the citation of the following cases: *Corts* v. *District of Columbia,* 18 D. C. (7 Mackey) 277; *Newman* v. *City of New York,* 57 Misc. Rep. 636, 108 N. Y. Supp. 676; *Nesbitt* v. *City of Greenville,* 69 Miss. 22, 30 Am. St. Rep. 521, 10 South. 452; *City of Jackson* v. *Carver,* 82 Miss. 583, 35 South. 157.

In the Corts case the complaint was:

"That a defect in the pavement itself had long been negligently suffered by the defendant to continue [on the sidewalk on the south side of Pennsylvania avenue] * * * and that by means of this defect, and of a coating of ice and snow, the injuries complained of had been caused."

The evidence was that the defect in the sidewalk was one of long standing, and the municipality had knowledge of it, and also knew that it would become dangerous to pedestrians when the sidewalk was covered with snow and ice.

The Newman case was one where an independent contractor, employed by the city, cut an opening in the asphalt pavement, and during suspension of the work put in a temporary filling. A heavy rain covered the entire surface of the street, so that the opening was hidden from view, and the plaintiff's vehicle was driven into the hole and damaged, whereupon he brought suit for damages. Under the circumstances, the city was held liable, the court stating, among other things:

"The opening apparently was not properly filled, and the water soaked through the filling, the loose earth settled, and the hole, which was subsequently found there, resulted therefrom. It is, in any event, clear from the result that the temporary filling was not done in such a way as to properly restore the street to a safe condition while nothing whatever was done to warn the public of danger."

In the Nesbitt case the plaintiff's decedent, while under a water-tank in the public street of the defendant city, was killed by the tank falling upon him. The tank rested upon posts from four to six feet high, above the surface of the street. One of the posts, becoming water soaked, gave way, causing the tank to fall. The tank had been in the street a long while, and was without question dangerous to persons passing along or using the street. The court said:

"Notice there must be to charge the municipality, but this notice may be actual or constructive or implied. When the obstruction is created by the city itself, or where it permits an obstruction erected by another in its streets, it must take notice of such defects in the obstruction as ordinary care will discover. The structure in a street, to every part of which the entire public has the right of free access, must be erected in such manner and from such materials as to be reasonably safe; and it must be kept in this safe condition. Proper repairs, from time to time, are as much the duty of the city as a safe structure originally. Inseparably connected with this statement is another, viz., that a municipality is liable for injury resulting from its defective structures, where, by reasonable diligence, it might have acquired knowledge of such defect. The common knowledge of mankind is chargeable to a municipality also. The knowledge of the action of the elements on structures of wood and of the liability of timber to decay under certain conditions, is to be attributed to municipalities, just as to natural persons. The duty of the municipality to exercise ordinary care to detect such natural decay, and to guard against injuries therefrom, follows necessarily."

In the Carver case we quote the facts as stated in the syllabus:

"A city engaged in installing a sewerage system dug trenches in the streets where the pipes were to be laid. At night it was the custom to erect temporary crossings for the use of pedestrians, by placing on the ground three or four planks, side by side. At one of these crossings the ground was not level. The surface of the ground was also covered with a layer of cinders, rendering the bank more liable to cave. The planks were not fastened. A pedestrian, while crossing the planks, was injured by the planks giving way and the banks of the ditch caving in. Held, that the city was chargeable with knowledge of the defective crossing."

In three of the above cases, the acts of negligence charged clearly arose out of the defective construc-

tion, or the neglect to guard the public against dangerous conditions that naturally grew out of the work as it progressed. In the Nesbitt case the obstruction was in the public street, and was of such a nature, because of its use and the frail material out of which it was constructed, as to exact from the city some attention by way of inspection or repairs. In all these cases the negligence was made to depend upon an existing defect or an omission to properly guard holes or trenches while making an improvement, or failure "to exercise ordinary care to detect natural decay," differing from the facts of this case, where it is shown the street was made safe for travel and thereafter regularly patroled and repaired if needed.

Another case relied upon by plaintiff is *Kelleher* v. *Newburyport,* 227 Mass. 462, L. R. A. 1917F, 710, 116 N. E. 806. That case was founded upon the negligence of the defendant in oiling its streets to such an extent that they became extremely slippery, so that an automobilist was unable to manage his automobile and skidded into the plaintiff's milk wagon, injuring the plaintiff, who subsequently died. It was clearly based upon the defective condition of the street. The question of the effect of rain upon the oiled street was suggested, and the court said that, if the rain was the factor which created the danger, the city should have anticipated it and guarded against its effect by warning, sanding, or otherwise. But it also said, "Oil spread upon the surface of the street, thus rendering it unreasonably slippery," created a defect in the street, and compared it with defective construction wherein Hyatt lights had been used in sidewalk. The defendant city had created the defect in the street, and plainly it was its duty to take whatever steps were reasonably necessary to protect the public against it. Here the only defect charged is the one caused by the rain. None existed before.

To illustrate the plaintiff's contention of the defendant's liability, this supposititious case is offered by her:

"Suppose a bridge in a weakened condition, so that it is apt to go down if a 2-ton truck were to attempt to cross it, but will hold up a Ford or light car. Under certain conditions then it is safe, and under others dangerous. The city, knowing this, throws it open to public in general, and it goes down with a 2-ton truck attempting to cross. There can be no question of the liability of the city."

Acceding that the plaintiff is entirely right, and that the city in such case would be liable, at the same time is it not apparent that the negligence was defective construction and not a failure to warn?

In *Johnson* v. *City of Worcester,* 172 Mass. 122, 51 N. E. 519, the facts were very similar to the facts in this case, but the issues were so formed as that the liability of the city was made to turn upon the question as to whether the trench was negligently filled. The evidence being in dispute on that question, it was submitted to the jury. The court said:

"We cannot say, as matter of law, that the jury were not warranted in finding that the settling was due to negligent filling."

It is obvious that, had the trench in that case been properly filled and back-filled, as it is conceded the one on Washington Street was, the determination of the court would have been different. What the court said on the different contentions of the parties, and the decision of the court, seems so *apropos* that we quote:

"The contention of the defendant was that the trench was properly filled, and that the settling was due to the unusual storm immediately preceding the accident; that the fall of rain was greater than was reasonably to be anticipated; and that the failure to provide against such a storm was consistent with due

care in filling the trench. The contention of the plaintiff was that the storm was reasonably to be anticipated; that the failure to provide against it was negligence; and that, considering the unusual state of things at this point and the whole evidence of the filling, the jury might well find that the most reasonable explanation of the settling was that the trench was not properly filled. Upon these matters the jury were instructed in a manner not now excepted to, except so far as inconsistent with the request to rule that there was no evidence to show negligence. We cannot say, as matter of law, that the jury were not warranted in finding that the settling was due to negligent filling.''

The standard of care imposed upon a municipality is that of an ordinarily prudent man. It is bound to keep its streets reasonably safe for travel, but it is not an insurer of those who travel thereon. Generally speaking, when a particular kind or class of work is done in the usual and customary way, its conformity to the rule may be granted. Where a city improvement is not defective when made, but later becomes so, the rule is that the city must have actual notice of a defect, or the defect must have existed a sufficient length of time to imply notice, before it is guilty of actionable negligence. True, the city in the progress of making an improvement must take steps to guard the public against the dangers incident thereto. It is not entitled to notice of a dangerous condition that it has created or caused to be created during the course of the improvement, but, where the improvement is finished or completed to the extent of being safe for use by the public, as in this case, we think to hold the city not entitled to notice but liable at all events is not the law. The correct rule is stated in *Klatt* v. *Milwaukee,* 53 Wis. 196, 40 Am. Rep. 759, 10 N. W. 162, as follows:

'' . . . If a street should, suddenly and without warning to or fault of the city, come by any means

into a condition dangerous to travel, the city would not be liable for damages occasioned thereby, without actual notice, or notice implied or presumed by lapse of time, of its condition, and until after a reasonable time for repairing it."

This rule is the outgrowth of the principle that a municipality is not the insurer of the safety of people who travel its streets and is not amenable in damages if, in the care of its ways, it exercises the precaution of an ordinarily prudent person. We are of the opinion that the city did all that a reasonably prudent person would have done under the circumstances. It filled and back-filled the trench in the usual way, and watched it for holes, filling them when any occurred. The city officials may have known the effect of water upon the filling in trench, but could they be expected to foresee that it would shrink enough to be dangerous to one traveling thereon himself using ordinary care? To answer this question in the affirmative is imposing upon a municipality a degree of caution and care that is unduly burdensome and unjustified.

The evidence clearly showing defendant had no knowledge of the hole in the trench, or that it had existed long enough to give the city constructive notice thereof, and these things, under the facts of this case, being necessary before liability is established, the motion for an instructed verdict should have been granted.

The judgment is reversed, and the cause remanded, with the instruction that plaintiff's complaint be dismissed.

LOCKWOOD, J., concurs.

McALISTER, C. J. (Dissenting).—The motion for an instructed verdict was, in my judgment, properly refused, and the cause rightly submitted to the jury, and for this reason I am unable to concur in the opin-

ion of my colleagues. Their conclusion is reached upon the ground that the city had neither actual nor implied notice of the existence of the defect causing the injury.

There could, it is true, be no liability unless the city had such notice. The evidence, however, discloses facts from which notice of the defect should be implied. The ditch, forty-two inches in width and over forty-four inches in depth, was cut through the pavement, and after the piping had been laid was refilled with the dirt removed from it. Its surface, however, was left exposed to whatever rain might fall, and the effect or action of water on earth or soil is a matter of common knowledge, and under the authorities such knowledge is chargeable to a municipality. In *City of Jackson* v. *Carver,* 82 Miss. 583, 35 South. 157, referred to in the majority opinion, the court said:

"It was said in the Nesbitt Case that 'the knowledge of the action of the elements on structures of wood, and of the liability of timber to decay under certain conditions, is to be attributed to municipalities just as to natural persons.' In this case, is not knowledge of the action of elements on the banks of trenches to be attributed to the municipality? Is it not chargeable with the knowledge that continued rains will render the perpendicular banks of a trench liable to cave; that planks unfastened, lying loose upon the uneven surface of the ground, are liable to slip or give way under pedestrians who by the action of the city are invited to use such crossings? We think the same rule applies."

There is no question but that the refilling was properly done and the public rightfully permitted to pass over the ditch until the rain began or until sufficient water fell to cause it to sink or saturate the earth to such an extent as to render it unsafe for automobiles whose drivers were unacquainted with it. But it rained for two days previous to the accident, and the city knew when the rain started that, if it

continued long enough, it would very probably create this dangerous condition. In fact, the assistant city engineer testified that a ditch filled as this one was might settle six or eight inches under such conditions, and the testimony of the person who supervised the laying of the piping was practically to the same ef-fect. Hence, it appears to me that it should be held under such circumstances that the city, having created the condition which made it possible for the rain to cause the defect, had knowledge of it, and that it was its duty to do what was necessary to warn the public of it. Inasmuch, however, as the record discloses that nothing of this kind was done, the case was properly submitted to the jury. That the appellant should bear the consequences of its failure in this respect is the only conclusion, as I see it, the record justifies. Such a holding is not making the city an insurer of those who travel its streets, but merely requiring it to do what a reasonably prudent person would have done under the same circumstances.

The judgment, in my opinion, should be affirmed.