·399 P.2d 723

Ruth VEGODSKY and Max Vegodsky,
husband and wife, Appellants,

v.

The CITY OF TUCSON, Appellee.

No. 2 CA–CIV 26.

Court of Appeals of Arizona.

March 5, 1965.

Rehearing Denied April 6, 1965.

Review Denied April 27, 1965.

Rees, Estes & Browning, by Paul G. Rees, Jr., Tucson, for appellants.

**104**

Calvin Webster, City Atty., for appellee.

MOLLOY, Judge.

This is an appeal from a judgment rendered for the defendant on a jury verdict in an action brought by a pedestrian alleging that the City of Tucson negligently constructed and/or maintained an area of its public streets so as to cause the plaintiff, Ruth Vegodsky, to fall and sustain personal injuries.

The area involved in the law suit was the intersection of Congress and Scott Streets in the downtown area of Tucson, Arizona. It was the plaintiffs' contention that Mrs. Vegodsky fell in the area where the portions of these two streets carrying vehicular traffic overlapped, that is, in the rectangular area of the intersection between the normal crosswalks. The evidence established that in the downtown area of the City of Tucson generally, and at the intersection in question specifically, there are lighted signals which have special pedestrian lights marked either "walk" or "wait" and that when the "walk" light is on, it is on for pedestrian traffic in both directions. It was further established that for a number of years pedestrians have been customarily cutting across diagonally in the center area of the street during this phase of the signal, and that this was well known to the officials of the defendant City of Tucson.

In the center area of the particular intersection the asphalt paving was in a roughened or raveled condition, with the coarse rock in the asphalt being exposed generally, except where there had been certain patches placed by the defendant. In one area, where the plaintiff contended that she fell, there was a hollowed out area between one and two inches deep and between one and three feet in diameter. This area was made uneven by the exposure of the coarser rocks in the asphalt, of about one inch in diameter, exposed by the weathering and/or wearing away of the finer materials in the pavement. It was established that the City of Tucson did not maintain the area in the center of the intersection as well, as it maintained the marked crosswalks and that the asphalt material used in the paving of this intersection was of such type and quality that in the normal course of weathering under conditions prevalent in Tucson, Arizona, the raveled condition described above was to be expected. The plaintiff was crossing the intersection in question at dusk when weather conditions were clear and dry. The plaintiff was wearing moderately high heels on a pump shoe (only a strap around the rear of the foot to hold the heel in). The plaintiff sustained a gash on her knee which required suturing after the accident. Subsequently, complications developed, which required surgery to remove a cartilage in the knee. There was some permanent impairment of function of the knee by reason of the injury.

The case was submitted to the jury on issues of negligence and contributory negligence, and the jury by a vote of nine out of twelve rendered a verdict in favor of the defendant. The plaintiff has made ten assignments of error, which will be discussed by this court in the order that they are presented.

The first assignment alleges that the trial court erred in submitting the question of contributory negligence to the jury. The plaintiff relies solely upon City of Phoenix v. Brown, 88 Ariz. 60, 352 P.2d 754 (1960).

In this Brown decision, the plaintiff had caught her toe in "a small hole at that point where the asphalt cement of the street and the concrete curb joined." (From page 62 of Vol. 88 Arizona Reports, p. 755 of 352 P.2d). The court held that inasmuch as there was "no evidence that the plaintiff in approaching and entering the crosswalk conducted herself in any manner different from that of the ordinary prudent person under the circumstances" (from page 66, 352 P.2d p. 758) there was no evidence of contributory negligence, and that the trial court rightfully refused instructions in this area of the law.

The instant case this court believes can be distinguished from the Brown case on the facts. This is not "a small hole" which might not readily be seen by a reasonably prudent person. This is a rather substantial area of roughness and indentation which might well have been observed by the plaintiff. The plaintiff testified that she did not look at the pavement at all on the occasion in question. This the jury might have found is not what a normally prudent person would have done under the circumstances.

The Brown decision appears to stand alone as far as "trip and fall" cases are concerned, both in the case law of our own state and in that of other jurisdictions. This court believes the decision should be limited to a situation where the plaintiff fell from a defect of such nature as to be likely to cause a pedestrian to fall, when the perceptibility of the defect was such that an ordinarily prudent person would not be likely to see it, and when these facts are so clear that reasonable men could not differ in regard thereto.

Accordingly, this court finds no error in the trial court's submission of contributory negligence to the jury. However, the manner of the submission of the issue was erroneous, and this court believes it to be its duty to raise this error on its own motion.

The trial court instructed the jury, in part:

"If you find that it did (that plaintiff's negligence contributed as the proximate cause of her injuries), your verdict must be for the defendant * * *."

A similar instruction has been held by our Supreme Court to be "fundamental and reversible error in that it deprived appellant of a constitutional right." Trojanovich v. Marshall, 95 Ariz. 145, 388 P.2d 149 (1963). This decision is, of course, based upon Layton v. Rocha, 90 Ariz. 369, 368 P.2d 344 (1962). The writer of this opinion deplores the Layton v. Rocha doctrine, considering it to be a violation of one of the fundamental precepts of our system of justice—that we are a government of law which applies to all alike. The Layton doctrine casts to twelve persons selected by lot shortly before trial the power to determine what the law will be as to the particular individuals before it. It sets down no standard for them to apply. Presumably, they may grant relief to a negligent plaintiff because they have an affinity for him and/or an aversion for the defendant, or, conversely, they may deny relief for equally capricious reasons.

However, this doctrine is undoubtedly the law of this state, and this court is bound to follow it. The Trojanovich decision indicates that it is the duty of this court to raise this matter on its own motion, and this court is so doing. The judgment of the lower court must therefore be reversed. However, in order to give guidance to the trial court on a new trial, the other assignments of error will be considered.

The second assignment is that the court erred in instructing the jury as follows:

"The duty to exercise ordinary care to avoid injury includes the duty to exercise ordinary care to observe and appreciate danger or threatened danger. A person is required to make reasonable use of her faculties of sight and intelligence to discover danger and conditions of danger to which she is or might have become exposed. If you find the plaintiff failed to exercise that degree of care, then you may find that the plaintiff was guilty of contributory negligence."

The only authority cited by the plaintiff in support of her contention that the foregoing is an incorrect statement of law is the City of Phoenix v. Brown decision, supra. A reading of this decision does not indicate the foregoing to be improper jury instruction if the question of contributory negligence is to be submitted. This court believes the instruction to be proper. 63 C.J.S. Municipal Corporations

§ 851, p. 201; 38 Am.Jur., p. 868, Negligence § 191.

The next two assignments are inter-related and revolve around the testimony elicited from Mr. Helbig, who at the time of the accident in question was the superintendent of streets and maintenance for the defendant city. He was called by the plaintiff to the stand for cross-examination and no objection was voiced by defendant to this procedure. During the examination of Mr. Helbig, plaintiffs' counsel asked him whether there was anyone regularly employed by the city to inspect the downtown sidewalks and streets for defects. To this question there was a negative answer. Subsequently, when the same witness was examined by the defendant's counsel, Mr. Helbig described what men he had available to him to repair streets and sidewalks defects. Thereupon, the following occurred:

"Q. (by defendant's counsel) Was that as full a staff as you could attain, considering the appropriation for your department?"

To this question, the objection was made that it was "totally immaterial." This objection was overruled and the witness answered in the affirmative. Immediately thereafter, the witness volunteered that the city had not allowed him sufficient money to provide the maintenance on the street in question in the manner that his department had proposed. Thereafter, during recross-examination by plaintiffs' counsel, questions were asked of this witness (1) as to whether or not he had had any disputes with the city manager about providing an inspector for the downtown streets and sidewalks, (2) as to which public official was in over-all charge of the street department, (3) as to whether or not Mr. Helbig had recommended continuing the employment of a sidewalk inspector, and (4) as to whether or not in the opinion of Mr. Helbig a sidewalk inspector would have seen and taken action on the defects at the intersection in question. To each of these questions objections were made by defendant on the grounds of materiality, and the same were sustained by the trial court. Plaintiffs' counsel then requested permission of the court to rephrase question (4) above. Thereupon, the court stated:

"I don't think you need follow that any further. There are too many other factors involved other than the question of appropriation, other than whether certain persons in charge make recommendations or not. It is a matter of common knowledge that public funds are always limited, and I don't see any purpose in pursuing that line of examination."

At this time the plaintiffs' counsel asked for the jury to be excused, which was done, and a motion for mistrial was made on the basis that the remarks were prejudicial to the plaintiffs' case.

On appeal, the plaintiff assigns as error the foregoing rulings and remarks of the court.

■ It seems generally to be the law that lack of municipal funds is not a defense in an action of this kind unless the municipality has exhausted the means at its disposal to raise funds. 19 McQuillin, Municipal Corporations, 3rd Ed. § 54.181.

■■ The door should never have been opened on the subject of the amount appropriated for street maintenance and the original objection of the plaintiffs' counsel should have been sustained. This, of course, does not foreclose testimony tending to establish that the cost of particular preventative measures would have been unreasonably high. 65 C.J.S. Negligence § 236, p. 1058.

■■ The court considers the examination of Mr. Helbig on the subject of whether or not he had recommended additional employees and whether or not a sidewalk inspector would have noticed the defects in question to be proper cross-examination of an expert witness. The city is required to take reasonable precautions to safeguard against accidents on its streets, and the recommendations and opinion of a person

as well qualified as Mr. Helbig upon this subject has some pertinency to the issues involved here. 7 Wigmore on Evidence (3rd Ed.) § 1949, p. 66; 32 C.J.S. Evidence § 546(79), p. 302.

Though the rulings of the court as to these questions were in error, the remarks made by the court in regard to public funds are not deemed of themselves sufficient grounds for a mistrial. It is common knowledge that public funds are limited and whether they are or not is not one of the factual issues of this case. Therefore, the comment was not in violation of our constitutional prohibition against commenting upon matters of fact. Art. 6, § 27, Arizona Constitution, A.R.S. A trial court may ordinarily explain his rulings on evidentiary matters without committing error. Udall, Arizona Law of Evidence, § 3, p. 7.

Whether the foregoing errors in the admission and exclusion of evidence as outlined above are prejudicial, this court declines to decide, in view of the fact that this case must be reversed for other reasons.

The next assignment of error is that the trial court wrongfully refused the plaintiff cross-examination of Mr. Helbig as to whether or not he had testified for the city in other falling cases.

Ordinarily, it is proper on cross-examination to bring forth prior connections between the witness and a party in order to show bias. 3 Wigmore on Evidence (3rd Ed.) § 949, p. 499.

However, the rule is not inflexible. A trial court must always consider the danger of injecting collateral issues into a case. The cross-examination to be pursued in this case would involve the bringing into evidence the fact that other persons had fallen on the streets and/or sidewalks of the City of Tucson. There was no showing that these other accidents occurred under similar conditions and for the same reasons as caused the plaintiff to fall. Therefore, such evidence has no direct probative value.

Montgomery Ward & Co. v. Wright, 70 Ariz. 319, 220 P.2d 225 (1950). Admission of such testimony is obviously prejudicial to the defendant, injects collateral issues, and has little legitimate impeachment value in this action. The loyalty of the witness Helbig to the City of Tucson was already well established. He had been an employee of the City of Tucson for over 25 years and had only 19 days before trial retired as a managing agent of the defendant. Under these circumstances, this court holds that the trial court properly sustained objections to questions asking Mr. Helbig whether he had testified for the city in other cases involving pedestrians falling on the streets and sidewalks of the city.

The next assignment pertains to the refusal to admit in evidence portions of the deposition of Mr. Helbig, which deposition was taken six days before trial, at a time when he was no longer employed by the City of Tucson. The trial court ruled that the deposition could be used only for impeachment purposes.

Rule 26(d) R.C.P., A.R.S. Vol. 16, provides in part:

"The deposition of a party or of anyone *who at the time of taking the deposition* was an officer, director, or managing agent of a public or private corporation, partnership, or association which is a party may be used by an adverse party for any purpose." (Emphasis supplied)

Under this rule, by its clear terms, this deposition could not be used "for any purpose" for the reason that at the time of the taking thereof Mr. Helbig was no longer an agent of the defendant City of Tucson.

The next assignment of error is predicated upon the refusal of the trial court to instruct the jury that the area in the center of the intersection where the plaintiff contended that she fell was a "crosswalk" under the statutes of the State of Arizona.

A "crosswalk" is defined in our statutes in A.R.S. 28–602, subsection 2, as follows:
"2. 'Cross walk' means:

"(a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or, in absence of curbs, from the edges of the traversable roadway.

"(b) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface."

At this intersection there were crosswalks clearly marked on the pavement, which were approximately the extensions of the sidewalks of the two streets concerned. Under these circumstances, the area in the center does not fall within the statutory definition of a "crosswalk" and no custom of the citizens and public officials of the City of Tucson can effectively change the statute. American Smelting & Refining Co. v. Wusich, 92 Ariz. 159, 375 P.2d 364 (1962).

However, this court holds that whether or not the area in question is a "crosswalk" is immaterial to the issues of this case. It was well established that citizens customarily used the area in question as if it were a crosswalk and that the city knew of this custom. The standard of care required of the city in the maintenance of its streets is not determined by whether an area is in a "crosswalk". The standard is reasonable care under the circumstances. City of Phoenix v. Weedon, 71 Ariz. 259, 26 P.2d 157 (1950); Alires v. Southern Pacific Company, 93 Ariz. 97, 378 P.2d 913 (1963). One of the circumstances obviously to be considered in this case was that large numbers of people were customarily using the area in question as a walkway. There is no point in giving an instruction as to whether or not the area in question is a "crosswalk" under the statute.

The next assignment of error is that the trial court erred in refusing to give an instruction requested by the plaintiff to the following effect:

"However, when a condition which is inherently dangerous or defective has been created through the carrying out of a plan adopted and authorized by the governing body of a city, no further proof than proof of that fact is needed to charge the city with notice of that condition."

This assignment is coupled with the contention that it was error to instruct the jury, over plaintiffs' objection, as follows:

"In addition to proving that the street in question in this case contained a dangerous defect, plaintiff must also prove by preponderance of the evidence that the defendant had actual or implied knowledge of such defect. In this case there is no evidence that the City had actual knowledge of the claimed defect. Before knowledge to the City may be implied, plaintiff must prove that the claimed defect existed for a sufficient length of time, that by the exercise of reasonable diligence the City should have known that it existed, and that the City had reasonable time in the exercise of ordinary care to have had it fixed."

This instruction given by the court is substantially in accordance with the law of City of Phoenix v. Weedon, supra.

This court believes the instant case to be distinguished from the Weedon decision in that here there was evidence from which the jury might have concluded that the defendant was pursuing negligent methods which resulted in plaintiff's injury. It was conceded by the defendant that it was not maintaining the center of this intersection in the same manner as the crosswalks. This was done despite the fact that the defendant city knew that the center of the intersection was customarily used by pedestrians substantially in the same manner as the crosswalks. There was testimony that the type of material being used could be expected to ravel in the manner that the subject intersection was raveled. Mr. Helbig testified that the condition so created was "dangerous for pedestrians, especially women with high heels."

Ordinarily, no notice is necessary to charge one with liability for one's own negligent conduct. 65 C.J.S. Negligence § 5, p. 354; 35 Am.Jur. 667, Negligence § 24. It is sufficient if under the circumstances of the particular case a reasonable person should realize his conduct involves an unreasonable risk of harm to one in the plaintiff's situation. Tucker v. Collar, 79 Ariz. 141, 285 P.2d 178 (1955). As to a defective sidewalk condition, notice is usually necessary because the cause of the defect is unknown and therefore there are many general statements of the law to the effect that there can be no liability unless there is notice, as the law was stated in the Weedon case, supra. However, when there is sufficient evidence to go to the jury on the question of whether or not the city itself caused the defect, then notice is not necessary and liability may be predicated upon the negligent conduct itself. 25 Am.Jur. 729, Highways § 438; Aguirre v. City of Los Angeles, 46 Cal.2d 841, 299 P.2d 862 (1956); 63 C.J.S. Municipal Corporations § 825, p. 163; 158 A.L.R. 773; McQuillin, Municipal Corporations (3rd Ed.), § 54.104.

The form of the plaintiffs' requested instruction, quoted above, is not entirely correct, inasmuch as it speaks of a "plan adopted and authorized by the governing body of a city" of which there was no evidence. But, the bequest, together with plaintiffs' objection to the instruction given on the requirement of notice, sufficiently presented thte problem to the trial court so that it should have given a correct instruction in this area of the law. Haymes v. Rogers, 70 Ariz. 408, 222 P.2d 789, 17 A.L.R.2d 896 (1950).

The next error assigned is that the court erred in instructing the jury that the defendant was not "an insurer of the safety of persons using its streets" and that it was "not required to keep its streets in an absolutely safe or perfect condition or free from every defect that possibly might lead to injury."

The affirmative duties of the city insofar as the maintenance of its streets was concerned were properly stated. The giving of this negative instruction may have been of some help to the jury in understanding these other instructions. The giving of a negative instruction, though not usually desirable, is not reversible error, if the law is properly stated and confusion does not result. 88 C.J.S. Trial § 303, p. 820. Terrell v. Missouri-Kansas-Texas Railroad Co., 327 S.W.2d 230 (Mo.1959).

The last assignment of error pertains to the refusal to permit the plaintiff to introduce evidence that eleven days after the accident in question the defendant city had repaired a defect in Scott Street immediately to the north of the intersection in question.

This court can see no relevancy to this evidence. The plaintiffs' argument that this in some way indicates that the defendant knew of another defect allegedly causing the plaintiff to fall eleven days previously is a non sequitur.

For the reasons hereinbefore stated, it is hereby ordered that the judgment of the trial court in favor of the defendant is reversed and the case is remanded for a new trial.

KRUCKER, C. J., and HATHAWAY, J., concur.