691 P.2d 1078

James M. COBURN and Karen Coburn,
husband and wife,
Plaintiffs/Appellants,

v.

The CITY OF TUCSON, a body politic,
Defendant/Appellee.

No. 17609–PR.

Supreme Court of Arizona,
En Banc.

Nov. 21, 1984.

Reconsideration Denied Jan. 8, 1985.

Law Offices of John R. Moffitt by John R. Moffitt, Tucson, for plaintiffs/appellants.

Kimble, Gothreau, Nelson & Cannon, P.C. by Michael J. Gothreau, Stephen Kimble, Tucson, for defendant/appellee.

FELDMAN, Justice.

This is a wrongful death action brought by the parents (plaintiffs) of Christopher Coburn, a seven year old boy, who was killed in a car/bicycle accident on August 17, 1982. Plaintiffs brought a tort action against the City of Tucson, primarily alleging that it had been negligent in failing to remove a large bush at the northwest corner of the intersection where the accident occurred. Arguing that it did not owe Christopher the duty of removing obstructions to vision at the intersection, the city moved for summary judgment. The trial court granted the motion, holding that the city had no duty to remove obstructions to vision at intersections and was therefore not liable to the plaintiffs. The court of appeals affirmed, *Coburn v. City of Tucson*, 143 Ariz. 76, 691 P.2d 1104 (1984). This petition for review followed. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3). We granted review in order to again attempt to clarify the distinction between "duty" and standard of conduct. Ariz.R.Civ.App.P. 23(c), 17A A.R.S.

A complete statement of facts is contained in the court of appeals opinion. The ultimate facts necessary for the disposition of this case are as follows: The accident occurred at a T intersection where East Mormon Drive meets Camino Seco in the City of Tucson. At the time of the accident, Christopher was riding his bicycle in an easterly direction, and the driver of the car which collided with the bicycle was going south on Camino Seco. The facts indicate that Christopher was riding east in the westbound lane of Mormon Drive and did not stop for the stop sign which controlled traffic on Mormon Drive. The bush was large (6' × 8') but was not growing in the right-of-way; rather, it was located in the adjacent lot on the northwest corner of the intersection. The city happened to be the owner of the lot.

In their petition for review, plaintiffs contend that the court of appeals incorrectly characterized the duty in this case by holding that the city had no duty to maintain an unobstructed view of the intersection. (143 Ariz. at 78, 691 P.2d at 1106, citing *Hidalgo v. Cochise County*, 13 Ariz. App. 27, 474 P.2d 34 (1970)). Plaintiffs contend, instead, that the city was under a duty to keep its streets reasonably safe for use by the travelling public. We agree with this portion of plaintiffs' argument.

Many tort decisions exhibit an unfortunate tendency to confuse the concepts of "duty" and standard of conduct and to argue that the city is, or is not, under a duty to post warning signs (*see City of*

*Phoenix v. Mayfield*, 41 Ariz. 537, 20 P.2d 296 (1933)), remove obstructions from the road or sidewalks (*see Beach v. City of Phoenix*, 136 Ariz. 601, 667 P.2d 1316 (1983)), install traffic control devices (*see Rodgers v. Ray*, 10 Ariz.App. 119, 457 P.2d 281 (1969)), fix potholes (*see Vegodsky v. City of Tucson*, 1 Ariz.App. 102, 399 P.2d 723 (1965)) and the like. We believe that an attempt to equate the concept of "duty" with such specific details of conduct is unwise. Attempting to define or evaluate conduct in terms of duty tends to rigidify the concept of negligence—a concept which, by definition, must vary from case to case, depending upon the relationship of the parties and the facts of each case. We agree with the following:

> ... the problems of "duty" are sufficiently complex without subdividing it ... to cover an endless series of details of conduct. It is better to reserve "duty" for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. In other words, "duty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty [if it exists] is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty. The distinction is one of convenience only, and it must be remembered that the two are correlative, and one cannot exist without the other.

*W. Prosser & W. Keeton, The Law of Torts* § 53 at 356 (5th ed. 1984).

■■ It has long been established in Arizona that a municipality is under an obligation for the benefit of those who use the public streets. *City of Phoenix v. Clem*, 28 Ariz. 315, 327, 237 P. 168, 172 (1925); *City of Phoenix v. Weedon*, 71 Ariz. 259, 263, 226 P.2d 157, 160 (1950). The existence of that obligation is recognized as "duty." *Beach v. City of Phoenix, supra.* The city did have a duty toward Christopher, and the nature of that duty is also well established in Arizona law. The city's duty was to conform to the recognized standard of conduct, which is to keep its streets reasonably safe for travel. *City of Phoenix v. Clem, supra; City of Phoenix v. Weedon, supra; Beach v. City of Phoenix, supra.*

■■ Thus, the duty remains constant, while the conduct necessary to fulfill it varies with the circumstances. *Beach v. City of Phoenix, supra.* We see no benefit and considerable danger in attempting to analyze cases such as this in terms of whether the city did or did not have a duty to post stop signs, erect traffic control lights, remove bushes or give warning. Nor, in the ordinary automobile accident case, is it wise to attempt to analyze the problem in terms of whether a motorist has a duty to stop, start, turn or signal. The city has a duty to keep the streets reasonably safe; motorists have a duty to drive with reasonable care; and the details of conduct necessary to meet those duties will vary from case to case, depending upon the foreseeability of harm if the person under the obligation pursues or fails to pursue a particular course of conduct. Restatement (Second) of Torts §§ 284, 289–90 (1965).

■ Of course, there may be cases similar to the one at bench where the question of "duty" does arise. For instance, an owner of land at the corner of an intersection may fail to remove a large tree or other obstruction to the vision of motorists on an uncontrolled intersection. The owner might even create an obstruction to vision by planting a tree or building a wall. It may be quite foreseeable that such an obstruction would create a hazard to drivers on the intersecting street. Ordinarily, creating such a foreseeable risk would breach the standard of care and thus would be negligent. However, liability does not attach unless there is also duty. The common law does not place the possessor of land abutting public highways under any

obligation to use or refrain from using his land so as to protect members of the travelling public on abutting streets.[1] *Rodgers v. Ray*, 10 Ariz.App. at 121, 457 P.2d at 283. The true issue in this case, therefore, is not whether the city had a duty toward Christopher. It had a duty to keep the streets reasonably safe for travel by Christopher and all others. The issue here is simply whether there is evidence sufficient to create a question of fact on the issue of whether the city's failure to remove the bush was conduct which fell below the standard of care and thus breached the duty. If the answer to that question is negative, then the trial court was correct in granting summary judgment and the court of appeals correct in affirming, even though both courts characterized the issue in terms of "duty." In analyzing the facts to determine this issue, we assume, without deciding, that because the city controls both the street and the adjacent land its duty as owner of the lot is coextensive with its duty as the possessor of the abutting streets.

Under the facts of the case at bench we find as a matter of law that there is no evidence of a breach of duty. The investigating police officer made a sketch of the intersection, showing the following configuration:

---

**1.** As the court of appeals indicated, of course, such a duty can be created by statute. *See Hall v. Mertz*, 14 Ariz.App. 24, 480 P.2d 361 (1971). In the case at bench, however, the court of appeals correctly concluded that the ordinance adopted by the City of Tucson did not impose such a duty on the city as an adjoining landowner.

The cross to the left of the letter "A" indicates the point of impact. The car ("D") was proceeding south, and Christopher ("A") was riding his bike east. A stop sign ("S") faced eastbound traffic. Christopher was on the wrong side of the street and failed to yield at the stop sign. While the bush may obstruct a driver's view of eastbound travelers who use the westbound lane and fail to stop at the intersection, it obviously does not obstruct the view for or the vision of eastbound travelers ·in the proper lane who do stop at the stop sign. The city is not bound to provide perfect intersections or streets, but only those which are "reasonably safe." What is "reasonably safe" takes into consideration certain minimal expectations that travelers follow the usual rules of the road. *Cf. Beach v. City of Phoenix*, 136 Ariz. at 604, 667 P.2d at 1319; *Rodgers v. Ray*, 10 Ariz.App. at 126, 457 P.2d at 288.

Plaintiffs urge that a traffic expert for the City of Tucson, Mayo Wilson, admitted in his deposition that the bush was a hazard and contend that this creates an issue of fact on the question of negligence. We disagree. It is true that Mr. Wilson did state that the bush obstructed vision and therefore created a hazard. He indicated, however, that he found the obstruction to exist when he borrowed a bicycle, placed it behind the bush on the wrong side of the road, and attempted to look to the north to see oncoming traffic. It is in these terms that he described the bush as an "obscurement." (Deposition of Mayo Wilson, 4/6/83, at 18.) The deponent did not state, and the sketch does not indicate, that the bush interfered with visibility for eastbound drivers in the proper lane, particularly for those who stopped at the stop sign. Thus, even if we assume that because the city controls both the street and the adjacent lot it has a greater duty than other owners, there is no genuine issue of fact on the question of negligence. We hold, as a matter of law, that a municipality is not ordinarily subject to liability for maintaining an intersection where a driver who stops at the stop sign has an unobstructed view of traffic approaching from both directions. The lack of liability may be framed in terms of duty, *see, e.g., Boyle v. City of Phoenix*, 115 Ariz. 106, 563 P.2d 905 (1977), but we prefer that duty be recognized as a distinct element involving the obligation of the actor to protect the other from harm. Here, there was a duty, but no negligence; therefore, there is no liability. Under other circumstances, reasonable people might find that the appreciable risk of harm to those traveling on either street was great enough that the city should have taken some additional measure to satisfy the standard of reasonable care.

The judgment of the trial court is affirmed and the opinion of the court of appeals is approved, as modified by this opinion.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice, specially concurring,

I concur in the result.