842 P.2d 1317

**Michael ROSEN and Bonnie Rosen, husband and wife, as individuals and on behalf of their natural son, Robert Rosen, Plaintiffs–Appellants,**

v.

**Samuel Manuel KNAUB and Jane Doe Knaub, husband and wife, Defendants–Appellees.**

**No. 1 CA–CV 90–344.**

Court of Appeals of Arizona, Division 1, Department B.

May 26, 1992.

Review Granted on Issue 2 Jan. 20, 1993.

Shiaras & Harrington by Neil J. Harrington, Phoenix, for plaintiffs-appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Ralph E. Hunsaker and Lisa M. Sommer, Phoenix, for defendants-appellees.

OPINION

JACOBSON, Judge.

The basic issue on appeal is whether the trial court, in a negligence action, can con-

stitutionally bifurcate the liability and damage portions of the jury trial.

Appellants, Robert Rosen and his parents (plaintiffs), appeal from the judgment in favor of appellees, Samuel Knaub and his wife (defendants), and from the denial of plaintiffs' motion for a new trial.

## FACTS AND PROCEDURAL HISTORY

This case arose out of an automobile accident in which an automobile driven by Samuel Knaub struck Robert Rosen, who was on a skateboard. The accident occurred on the evening of March 31, 1987, on West Cholla Street in Glendale. The posted speed limit in that residential area was twenty-five miles per hour.

At approximately 8:45 p.m., Samuel Knaub, 56, was driving a pickup truck westbound on Cholla Street. He did not see any children in the street. At the same time, Rosen, age 16, rode a skateboard down the inclined driveway into Cholla Street. He began his ride about halfway down the driveway on its western side, crossing from the west to the east side. He left the drive into Cholla Street at the eastern edge of the driveway, and traveled east in the westbound lane, in the direction of Knaub's truck.

Knaub spotted Rosen and applied the brakes. In his deposition,[1] Knaub testified:

Q. And in your interrogatories you estimate that you saw this boy approximately three to five feet before the impact actually occurred. Is that right?

A. I'm not sure of the distance. It was immediately. I jumped on the brakes and he came out of the dark, just shot into the lights and he was there.

.    .    .    .    .

Q. Can you remember what this boy was wearing? Did you have a chance to appreciate that before the collision occurred?

A. Dark clothing. It was all dark clothing.

Q. Do you remember attempting to steer, put any steering input into your vehicle's steering wheel before the collision occurred?

A. It was so sudden. I just jumped on the brakes. That's what I remember. I don't remember trying to swerve. I didn't have time to swerve.

The accident occurred in the middle of the block. There was no pedestrian crosswalk. After Knaub applied the brakes, the truck skidded a short distance and then struck Rosen, continuing to skid before coming to a stop. Rosen was severely injured.

Officers of the Glendale Police Department investigating the accident found that the sun had set at the time of the accident, but that a streetlight was operating near the point where the truck came to a stop. The nearest other streetlights were located 290 feet in either direction. However, the area was not well-lit; the investigating officer stated that "the area was very dark despite the presence of street lights on the north side of West Cholla Street." There was also testimony that the driveway where Rosen began his ride was lighted by two floodlights. Rosen was wearing blue jeans and a black shirt.

The parties disputed how fast Knaub was driving. Knaub estimated his speed at twenty-five to thirty miles per hour. Defendant's expert, Lamont Skousen, estimated the speed at thirty miles per hour. By Officer John Singleton's calculations, the truck was traveling at least thirty-four miles per hour. Plaintiffs' expert, Dr. Robert Piziali, estimated the truck was going at least thirty-six miles per hour.

The parties also dispute whether Knaub could have avoided the accident. Piziali testified that, had the truck been going twenty-five miles per hour, it would have stopped short of the point of impact. On the other hand, Officer Singleton, the lead investigating officer, wrote in his report that "the collision would still have occurred had the pickup been traveling twenty-five miles per hour due to the close proximity of the beginning of the skid marks to the area of the collision." He reaffirmed this conclusion at trial.

---

1. Knaub died prior to trial. Portions of his deposition were read to the jury.

Defendants' expert, Skousen, testified that, in his opinion, based on the coefficient of friction, the pattern of skid marks, tests he performed with the truck and tests of the speed of skateboard riders, Knaub could not have perceived and reacted to Rosen in time to avoid the accident. Skousen testified that, in his opinion, had the truck been traveling twenty-five miles per hour, the collision still would have occurred. He opined that the cause of the accident was the boy's presence in the street traveling in the direction of the truck.

Prior to trial, the court granted defendants' motion to bifurcate, trying the issue of liability first. The jury returned a unanimous verdict in favor of defendants. Plaintiffs filed a motion for new trial, which the court denied, and judgment was entered in accordance with the verdict. Plaintiffs timely appealed from the judgment and the order denying the motion for new trial. We have jurisdiction pursuant to A.R.S. § 12–2101(B). *See also* A.R.S. § 12–2101(C).

## DISCUSSION

### I. Bifurcation

■ Plaintiffs argue that the trial court violated the Arizona Constitution when, pursuant to Rule 42(b), Arizona Rules of Civil Procedure, it bifurcated the trial, trying liability before damages. The Arizona Constitution leaves the issue of contributory negligence to the jury:

> The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury.

Ariz. Const., art. 18, § 5. Plaintiffs argue that, in accordance with art. 18, § 5, the jury is required to hear all evidence, including damages evidence, before deciding whether to apply the doctrine of contributory negligence. Implicit in plaintiffs' argu-

ment is the contention that the jury is entitled to see the extent of the injuries suffered by the plaintiff in order to assess whether contributory negligence will be applied. We disagree with this position.[2]

Issues of liability and damages are separate. Our supreme court has noted:

> Separation of issues of liability from those relating to damages is an obvious use for Rule 42(b). Logically [,] liability must be resolved before damages are considered. Often the evidence pertinent to the two issues is wholly unrelated. Thus it is not surprising that courts, in many kinds of litigation, have ordered this separation.

*Morley v. Superior Court,* 131 Ariz. 85, 87, 638 P.2d 1331, 1333 (1981) *quoting* C. Wright & A. Miller, *Federal Practice & Procedure* § 2390 (1971). As Judge Cardozo has stated:

> The question of liability is always anterior to the question of the measure of the consequences that go with liability. If there is no tort to be redressed, there is no occasion to consider what damages might be recovered if there were a finding of a tort. We may assume, without deciding, that negligence, not at large or in the abstract, but in relation to the plaintiff, would entail liability for any and all consequences, however novel or extraordinary.

*Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99, 101 (1928) (quoted in *Tucker v. Collar,* 79 Ariz. 141, 145, 285 P.2d 178, 182 (1955)).

■ Plaintiffs attempt to avoid the logical distinction between the two issues by asserting that the evidence on damages was, in this case, relevant to the issue of liability. They assert: "Constitutional error was committed when the plaintiffs were prevented by the bifurcation ruling from demonstrating to the jury that the injuries sustained varied based upon the speed of the truck, rather than upon pres-

**2.** Nothing in the cases the appellees cite supports their position that the jury must hear damages evidence before determining the liability issue. *See Hall v. A.N.R. Freight System, Inc.,* 149 Ariz. 130, 717 P.2d 434 (1986); *Heimke v. Munoz,* 106 Ariz. 26, 470 P.2d 107 (1970); *Veg-* *odsky v. City of Tucson,* 1 Ariz.App. 102, 399 P.2d 723 (1965); *Inspiration Consol. Copper Co. v. Conwell,* 21 Ariz. 480, 190 P. 88 (1920); *Winchester v. Palko,* 18 Ariz.App. 534, 504 P.2d 65 (1972).

ence of a pedestrian." We find no merit to this argument because the injuries Rosen would have suffered if defendant's truck had been traveling at a different speed than it actually was are irrelevant to this case. Rosen's injuries were what they were. Whether they might have been different had the situation been different is merely a hypothetical exercise.

The jury's constitutional function under art. 18, § 5 was not hampered by the lack of evidence on damages because that evidence is not relevant to the issue of liability. We find no constitutional violation in bifurcating this trial.[3]

## II. Jury Instructions

Plaintiffs next argue that the court erred in giving two instructions requested by defendants. The instructions at issue read:

You are instructed that the driver of an automobile is not required to anticipate the sudden appearance of children in his pathway under ordinary circumstances. His duty is that of a reasonable person under all of the circumstances.

You are instructed that all persons are required by law only to anticipate and foresee and guard against what usually happens, or is likely to happen, but that they are not required to foresee and provide against that which is unusual and not likely to happen. The proper test in cases of this kind is not whether the injurious result or consequence was possible, but whether it was reasonably probable to occur according to the usual experience of persons.

As defendants point out, instructions virtually identical to these instructions have been previously approved by our supreme court. For example, the following instruction has been approved: "[A] driver is not required to anticipate the sudden appearance of children in his pathway under ordinary circumstances." *Schmerfeld v. Hendry*, 74 Ariz. 159, 245 P.2d 420 (1952). *See also Esquivel v. Nancarrow*, 104 Ariz. 209, 213, 450 P.2d 399, 403 (1969) (similar instruction approved).

Plaintiffs argue that the cases approving the above instructions are no longer good law after *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 706 P.2d 364 (1985). They note that, in *Markowitz*, the supreme court decried the confusion between the concepts of "duty" and "specific details of conduct." *Id.* at 355, 706 P.2d at 367. *See also Coburn v. City of Tucson*, 143 Ariz. 50, 51–52, 691 P.2d 1078, 1079–80 (1984). We fail to see how *Markowitz* and *Coburn* are implicated in this situation.

Plaintiffs misapply the concerns voiced by the supreme court in *Markowitz* and *Coburn*. The court commented on the failure of courts and attorneys to distinguish between the concepts of legal duty and the standard of conduct or care necessary to fulfill that duty:

[T]he problems of "duty" are sufficiently complex without subdividing it ... to cover an endless series of details of conduct. It is better to reserve "duty" for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. In other words, "duty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty [if it exists] is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty. The distinction is one of convenience only, and it must be remembered that the two are correlative, and one cannot exist without the other.

*Coburn v. City of Tucson*, 143 Ariz. at 51–52, 691 P.2d at 1079–80, *quoting* W. Prosser & W. Keeton, *The Law of Torts* § 53 at 356 (5th ed. 1984).

The supreme court's concern in *Markowitz* and *Coburn* was the concept of duty. The existence of a duty is one for the court,

---

**3.** Plaintiffs also argue that the court erred in giving the jury instructions based on R.A.J.I. 1A, 2A, 3A, 5 (modified) and 9A. This argument is based on plaintiffs' assertion that bifurcation was unconstitutional. Because bifurcation was not unconstitutional, we find no error in giving these instructions.

but the question of negligence—failure to meet the applicable standard of care—is ordinarily one for the jury.

In this case the defendant did not dispute that he owed plaintiff a duty. Rather, as recognized by *Markowitz,* the jury was instructed as to the "details of the conduct" that is, whether defendant's conduct breached the applicable standard of reasonable conduct. We find no reversible error on this basis.

### III. Sufficiency of the Evidence

■ Plaintiffs also argue that the verdict was clearly the result of passion or prejudice and that a new trial should have been granted for that reason. They contend that the evidence conclusively established that had Knaub been driving at or below the legal limit of twenty-five miles per hour, the truck would have stopped short of the point of impact and no accident would have occurred. They argue that the evidence conclusively established Knaub's negligence and that the jury's apparent determination that Knaub had no fault did not comport with the evidence. There are two problems with plaintiffs' argument: (a) the evidence was not undisputed; and (b) the argument proceeds from a faulty premise.

Although plaintiffs' expert testified that his opinion was that had Knaub been driving twenty-five miles per hour or less, the truck would have stopped short of the point where it struck Rosen, this testimony was disputed. Defendants' expert, Skousen, testified that it was his opinion that Knaub could not have perceived and reacted to Rosen in time to avoid the accident, even had he been going twenty-five miles per hour. Officer Singleton concurred in that opinion.

Plaintiffs' response that they discredited Skousen's testimony on cross-examination is unavailing on appeal. The jury is the trier of fact and this court may not substitute its own conclusions to draw from disputed evidence. *See Farr v. Transamerica Occidental Life Ins. Co.,* 145 Ariz. 1, 5–6, 699 P.2d 376, 380–81 (App. 1984). When reviewing the evidence upon which a verdict rests, we may not weigh the evidence and substitute our own conclu-

sions for those reached by the jury. *Adroit Supply Co. v. Electric Mutual Liability Ins. Co.,* 112 Ariz. 385, 390, 542 P.2d 810, 815 (1975). Because evidence in the record supported the jury's verdict, the trial court did not abuse its discretion in denying the motion for new trial. *See Fridena v. Evans,* 127 Ariz. 516, 522, 622 P.2d 463, 469 (1980).

Moreover, defendants presented evidence that Rosen was negligent in riding his skateboard in the street. It was up to the jury to determine whether either party was negligent, and whether that negligence contributed to the accident. Because there was evidence to support the verdict, the court did not abuse its discretion in denying the motion for new trial.

### IV. Improper Closing Argument

■ Plaintiffs argue that defense counsel made inappropriate remarks during closing argument. They contend that these remarks were prejudicial and require a new trial. Defense counsel stated to the jury:

> MR. HUNSAKER: ... What this case is about is a young man 16 years of age riding a dangerous toy, a skateboard out into the street just before a car gets there, in dark clothing. Yes, and I will say dark clothing. How many of you would rather be out in the street at night with dark clothing on versus white clothing, who darted out into the street, and who could have stayed on the driveway?

No objection was made to that comment. Later, defense counsel made the following remarks:

> Now, I, ladies and gentlemen, submit to you that five miles an hour over the speed limit under those circumstances is not unreasonable and not imprudent. I don't know, you know, except for the grace of God, there goes us probably, driving down a street like this, and a young man rides a skateboard out in front of you.
>
> MR. SHIARAS: Your Honor, could we have that stricken. That really is improper.
>
> THE COURT: The objection is sustained. The last two sentences will be stricken.

MR. HUNSAKER: I'm sorry, Your Honor.

Plaintiffs argue that counsel's comments asked the jury to decide the case on improper standards. The Washington Supreme Court has stated:

> [W]hether made by plaintiff's counsel or defendant's counsel, an argument in a civil case is improper which appeals to the jurors to place themselves in the position of a litigant and to decide the case based upon what they would want under the circumstances.

*Adkins v. Aluminum Co. of America,*, 110 Wash.2d 128, 750 P.2d 1257, 1265, *clarified,* 756 P.2d 142 (Wash.1988). Counsel's statements were clearly improper in this respect and the court properly struck them.

Plaintiffs argue that the court's striking of the comment was insufficient to remove the prejudice because there was no way to "unring the bell." Thus, they argue, the verdict was the result of passion and prejudice, and a new trial was required under Rules 59(a)(2) and (7), Arizona Rules of Civil Procedure.

Because the trial court is present and able to assess the prejudicial effect of arguments firsthand, its discretion in granting or denying a motion for new trial is quite broad. *City of Glendale v. Bradshaw,* 114 Ariz. 236, 239, 560 P.2d 420, 423 (1977); *Reeves v. Markle,* 119 Ariz. 159, 579 P.2d 1382 (1978). In *Taylor v. DiRico,* 124 Ariz. 513, 606 P.2d 3 (1980), a medical malpractice action, plaintiff's counsel committed similar improprieties in closing argument:

> If this man had been treated as you would like to be treated yourself—you think about it. If you had a loved one or you yourself or any situation, from what you have heard on this witness stand— And do you think that if your son or your daughter or mother or father or you yourself, now that you know—

*Id.* at 518, 606 P.2d at 8. The supreme court rejected appellant's argument that

because of these improper remarks, the trial court abused its discretion in denying a new trial: "While this type of argument may be improper, the extent of the 'golden rule' argument made in this case was not sufficient to have caused the jury to return a verdict which was the result of passion and prejudice, and we therefore will not interfere." *Id.*[4] Likewise, here, we find that the isolated improper reference was not so clearly prejudicial that it would constitute an abuse of discretion in the trial court's denial of the motion for new trial.

## CONCLUSION

For the foregoing reasons, the judgment is affirmed.

KLEINSCHMIDT and GARBARINO, JJ., concur.

---

4. In *Taylor,* the comments of counsel were cumulative; defendants also objected to improper cross-examination and to counsel's improper arguments concerning the defense of contributory negligence. The court's holding was that not even the combination of these was enough to warrant a finding that the trial court abused its discretion. *Id.*