9 P.3d 311

Mary E. ISBELL, for and on Behalf as surviving spouse of Richard Levonne IS-BELL, and for and on behalf of Dennis Isbell, David Isbell, John Isbell, Marsha Isbell, the surviving children of Richard Levonne Isbell, Plaintiffs–Appellees,

v.

MARICOPA COUNTY, Defendant–Appellant.

No. CV–99–0329–PR.

Supreme Court of Arizona,
En Banc.

Aug. 31, 2000.

Begam, Lewis, Marks & Wolfe, P.A. by Elliot G. Wolfe and Dena Rosen Epstein, Phoenix, for Isbell.

Richard M. Romley, Maricopa County Attorney by Richard A. Stewart, Deputy County Attorney, Phoenix, for the County.

## OPINION

McGREGOR, Justice.

¶ The court of appeals reversed a judgment entered in favor of the plaintiffs and against the County after concluding that the plaintiffs' theory against the County rested upon duties the County did not owe to the plaintiffs. We granted review to consider again the relationship between duty and breach of duty.

### I.

¶ On April 10, 1990, Richard Isbell was killed when the truck he was driving collided with a train at the intersection of a railroad crossing and Chandler Heights Road in Chandler, Arizona. At the time of the accident, crossing warnings consisted of eight-inch flashers with no electronic gates. Four years prior to the accident, the Arizona Department of Transportation, at the request of Maricopa County, petitioned the Arizona Corporation Commission for authority to "improve and install two (2) flashing light grade crossing signals augmented by automatic gate arms, together with necessary actuating and operating circuits and adequate instrument housing, at the Chandler Heights Road Public Grade Crossing." Application of the Ariz. Dep't of Transp. to Improve and Install Automatic Warning Signals, Decision No. 54856 (Arizona Corp. Comm'n Jan. 22, 1986). Arizona Revised Statutes Annotated (A.R.S.) § 40–337.01.A permits the Corporation Commission to issue such an order if it finds that a particular crossing is "sufficiently hazardous as to require the installation of automatic warning signals or devices at such crossing." *Id.* The Commission, concluding that "[t]he proposed construction involving the improvement and installation of the automatic signals and warning devices at the Chandler Heights Road Public Grade Crossing (AAR/DOT 741–681–A) is in the interest of public convenience and necessity," granted the State's application and ordered installation of the improvements. *Id.* The State then entered into a contract with the Southern Pacific Transportation Company (the railroad), which was to install the improvements.

¶ 3 During the four years between the County's original request for the order and the accident, the railroad failed to install the additional safety measures. Neither the State nor the County questioned why the railroad had not installed the gates and signals.

¶ 4 Isbell's survivors filed suit against the State, the County, the railroad, and the City of Chandler. The railroad and the City of Chandler settled before trial. At trial, the jury found for the plaintiffs against both the County and the State, which separately appealed. On the County's appeal, the court of appeals reversed the trial court's judgment in a memorandum decision, directing entry of judgment in favor of the County. We granted review and exercise jurisdiction pursuant to Arizona Constitution, article VI, section 5(3), A.R.S. § 12–120.24, and Arizona Rule of Civil Appellate Procedure 23.

### II.

#### A.

¶ 5 The plaintiffs first argue that the court of appeals confused the question whether the County owed a duty to plaintiffs with the question whether the County breached the applicable standard of care. The distinction is essential because the court of appeals directed entry of judgment for the County based upon its conclusion that the plaintiffs "were permitted to recover on a theory based on duties the County did not have—a duty to follow up on the request and a duty to prevent accidents caused by a condition created by a third party regardless of lack of notice of that condition." *Isbell v. Maricopa County,* No. 1 CA–CV 98–0260, slip op. at 9 (Ariz. Ct.App. May 13, 1999). We agree with plaintiffs that the court erred in directing entry of judgment for the County.

282

**282**

¶ 6 As in any tort claim, the plaintiffs could prevail only if the court determined that the County owed a duty, and the jury decided that the County breached its duty. *See Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). These two requirements are independent:

> [T]he existence of a duty is not to be confused with details of the standard of conduct. This incorrectly leads to attempts to decide on a general basis whether a defendant has a "duty" to post warning signs, fix potholes, or provide additional traffic signs. These details of conduct bear upon the issue of whether the defendant who does have a duty has breached the applicable standard of care and not whether such a standard of care exists in the first instance.

*Id.* at 355, 706 P.2d at 367 (citations omitted).

¶ 7 At trial the plaintiffs argued that the County had a duty to keep Chandler Heights Road reasonably safe for vehicular traffic. The plaintiffs contended that the County breached its duty by failing to follow up on its request that improvements be installed at the crossing and by failing to reduce the speed limit at the crossing when the improvements were not installed. The County agreed that it had a common law duty to maintain a safe road for all motorized vehicles, *see Dunham v. Pima County*, 161 Ariz. 304, 306, 778 P.2d 1200, 1202 (1989), which required the County to act as a reasonably prudent person to secure the safety of those vehicles in the intersection. *See Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982).

¶ 8 To support their argument that the County breached its duty and failed to act in a reasonable manner to prevent injury on its roadways, the plaintiffs presented expert testimony that improvements are normally completed within eighteen months of a Commission order and that, had the gates been present, Mr. Isbell probably would not have died. The plaintiffs' expert further testified that a reasonably prudent person, at the very least, would have inquired as to why the gates had not been erected and would have reduced the speed limit leading to the crossing. The County, in response, presented evidence that the crossing was reasonably safe without the improvements and argued that, consequently, it fulfilled its duty to maintain reasonably safe roadways. The conflicting evidence raised an issue of fact that the court properly referred to the jury. *See Markowitz*, 146 Ariz. at 359, 706 P.2d at 371 (noting that a question of breach of duty is a fact question properly submitted to a jury). Based upon the evidence presented, the jury could have concluded that the County's failure to follow up on the order or change the speed limit on the road did not establish a breach of any duty. Instead, the jury concluded the County breached its duty to maintain safe roads and rendered a verdict accordingly.

¶ The court of appeals' conclusion that the County had no duty to follow up on the request for gates equates the concept of duty with details of conduct, an approach we rejected in *Markowitz*. The County recognizes its duty to maintain safe roadways. The issue here was whether the County breached that duty through the specific conduct of failing to follow up on its request for improvements or by failing to reduce the speed limit when the improvements were not completed. That decision was for the jury to make. We therefore conclude that the court of appeals erred by directing judgment for the County on the basis that it had no duty to follow up on its request for crossing improvements.

### B.

¶ 10 The County also argued, and the court of appeals agreed, that the trial court erred in precluding evidence and arguments on the issue of the County's notice of the dangerous condition of the crossing. *See Isbell*, slip op. at 2. The plaintiffs assert that their theory of liability against the County did not require proof of notice.

¶ 11 The dispute over notice arose when the County proposed a jury instruction that told the jury the County could be held responsible for the dangerous condition of the crossing only if it had notice of the condition. In response, the plaintiffs filed a motion in limine arguing that their claim against the County relied upon the County's own negli-

gence, not that of a third party, and requesting the trial court to instruct the defendants not to "mention, refer to, interrogate concerning, attempt to introduce in evidence or otherwise attempt to convey to the jury . . . . [t]hat plaintiffs must show that the defendants had actual or constructive notice of the dangerous condition of the railroad crossing." (R.O.A. at 285.) The trial court granted the motion.

¶ 12 As an abstract proposition, the County's argument is correct: a governmental entity may be held liable for the negligence of a third party that creates a dangerous condition only if the government has actual or constructive notice of the condition. *See, e.g., Lowman v. City of Mesa*, 125 Ariz. 590, 593, 611 P.2d 943, 946 (1980) (holding a city has a duty to maintain streets in safe condition and to warn of dangers of which the city has actual or constructive notice.) On the other hand, a plaintiff need not establish "notice" if a government agency itself creates or causes the dangerous condition. In *Wisener v. State*, 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979), we considered a claim against the State based upon injuries sustained when a driver swerved to avoid a cow that had entered a highway through a defect in control fences constructed by the State. We rejected the State's argument that it could not be held liable when it had not received notice that cattle were escaping through the fence, because the claim against the State relied upon allegations that the State itself had been negligent. "[I]f the . . . [State] itself caused the defect, or if the repairs or improvements were defective when made, notice of the defects is not a prerequisite to holding the . . . [State] liable." *Id.* at 150, 598 P.2d at 513 (citations omitted). Likewise, in *Vegodsky v. City of Tucson*, 1 Ariz.App. 102, 109, 399 P.2d 723, 730 (1965), the plaintiff alleged the city failed to adequately maintain an area used as a pedestrian crosswalk, while the city argued it had no notice of the allegedly dangerous condition. The court of appeals held that the plaintiffs did not have to prove notice: "[W]hen there is sufficient evidence to go to the jury on the question of whether or not the city itself caused the defect, then notice is not necessary and liability may be predicated upon the negligent conduct itself." *Id.*

¶ 13 The plaintiffs' claim against the County falls within those cases in which notice is not required, because it relied upon allegations that the County itself was directly negligent. The plaintiffs alleged that the County's failure to act during the years between the Corporation Commission's order and the accident involving Mr. Isbell breached its duty to maintain its roads in a safe condition. The claim against the County, like the claims against the governmental defendants in *Vegodsky* and *Wisener*, therefore required the plaintiffs to show that the County itself was negligent, not that the County had notice of, and therefore was responsible for, the negligence of another. As we noted above, the plaintiffs presented sufficient evidence in support of their theory to justify submitting the issue to the jury, which apparently agreed that the County acted negligently. We find no error in the trial court's order excluding the issue of notice.

### III.

¶ 14 For the foregoing reasons, we vacate the opinion of the court of appeals and affirm the trial court's judgment.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, STANLEY G. FELDMAN, Justice and FREDERICK J. MARTONE, Justice.