John D. LOVE, Estate of; Love Automotive Inc.; Love Chevrolet Company; Love Chevrolet Geo Company; Love Chevrolet Oldsmobile, Inc.; Love Pontiac Cadillac Buick GMC Truck, Inc.; Saturn of Columbia, Inc.; Saturn of Savannah, Inc.; Steven L. Hyatt, Co–Representative of John D. Love, deceased and as Trustee of the Trust Created for the Children of John D. Love and as Conservator of Said Children; Michael E. Love, Co–Representative of John D. Love, deceased; Nathan J. Love, Co–Representative of John D. Love, deceased and as surviving parent of John D. Love, Plaintiffs–Appellants,

v.

GENERAL MOTORS CORPORATION, a Delaware corporation, Defendant–Appellee.

No. 00–15283.

D.C. No. CV–98–00265–SMM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 2001.

Decided July 2, 2001.

Before SCHROEDER, Chief Judge, LAY * and THOMPSON, Circuit Judges.

MEMORANDUM **

John D. Love, owner and director of several General Motors' (GM) dealerships (the Dealerships), was killed in a balloon accident in Arizona at a party GM organized for successful Chevrolet dealerships. After his death, the Love Dealerships sued

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

GM on a variety of theories. The Dealerships sought damages for Love's post-accident medical expenses as well as for the economic harm caused to the Dealerships by Love's death. The district court rejected the Dealerships' claims, holding that Arizona law did not allow an employer to recover for damages stemming from the negligent death of an employee. We affirm.

## I. Background

John D. Love was dealer and owner of multiple automobile franchises. In 1996, GM hosted an awards event in Arizona for representatives of its top dealerships, which Love attended. One of the attractions at the awards event was hot air balloon rides. The Dealerships allege that the balloon rides were over-booked, causing the balloon company to acquire an additional, defective balloon. Love died when the defective balloon malfunctioned.

GM moved to dismiss the case brought by the Dealerships, arguing, *inter alia*, that Arizona law did not allow an employer to recover for damages incurred due to the negligent death of an employee.[1] The district court agreed, holding that the Arizona case of *Phoenix Professional Hockey Club. Inc. v. Hirmer*, 108 Ariz. 482, 502 P.2d 164 (1972) prevented the Dealerships from recovering for Love's death. We agree and affirm the district court's decision.

## II. Discussion

This is a diversity case and both parties agree that Arizona state law controls. We review district court interpretations of state law *de novo*. When applying state law in diversity cases, we are bound by the pronouncements of the state's highest court. *See Davis v. Metro Productions, Inc.*, 885 F.2d 515, 524 (9th Cir.1989).

The Dealerships seek damages flowing from the death of Love. In *Hirmer*, the Arizona Supreme Court faced nearly an identical issue. Plaintiff in *Hirmer* was a professional hockey team and the goalie was negligently injured by the defendant. Plaintiff sued, seeking to recover the cost of hiring a substitute goalie for the time the injured goalie could not play. The Arizona Supreme Court dismissed the plaintiff's complaint holding it was unwise "to extend the duty of the wrongdoer to include a loss to the innocent employer." *See Hirmer*, 502 P.2d at 165.

To escape the seemingly overwhelming force of *Hirmer*, the Dealerships argue that subsequent developments in Arizona law have impliedly overruled *Hirmer*. But the Dealerships misjudge this court's authority in diversity cases. They cite to no Arizona case that expressly (in a holding or in *dicta* ) casts doubt on the clear language and holding in *Hirmer*. They simply provide us no valid reason to believe that the Arizona Supreme Court has retreated from *Hirmer*, especially given that every other jurisdiction has similarly rejected an employer's claim for negligent injuries to employees. *See, e.g., Lusby v. Union Pacific R. Co.*, 4 F.3d 639 (8th Cir.1993); *Owen v. United States*, 713 F.2d 1461 (9th Cir.1983).

While subsequent development in state law might allow a federal court to ignore the teaching of a state's highest court, the Dealerships have not demonstrated any such change here. The Dealerships suggest that post-*Hirmer* development in the Arizona Supreme Court's analysis of tort duty have impliedly overruled *Hirmer*. For example, they cite *Coburn v. City of Tucson*, 143 Ariz. 50, 691 P.2d 1078 (1984), as standing for the proposition that "the existence of a duty is generally a relatively

1. Love's personal representatives filed suit against GM in Arizona state court and subse-    quently settled all claims against GM.

straightforward analysis—it is a question of what conduct the defendant is obligated to conform to, *regardless of the plaintiff.*" Plaintiff's Opening Br. at 18 (emphasis added). But *Coburn* stands for the opposite proposition. In *Coburn,* the Arizona Supreme Court explicitly rejected the plaintiff's argument. It refused to conflate the question of the standard of care—what conduct the defendant must conform to—with the question of duty. Duty, the court explained, referred not to "[w]hat the defendant must do, or must not do," but to the "question of whether the defendant is under any obligation for the benefit of the particular plaintiff." *Coburn,* 691 P.2d at 1080 (*quoting* W. Prosser & W. Keeton, *The Law of Torts* § 53 at 356 (5th ed.1984)). Thus, the clear shift in Arizona law that the Dealerships point to simply has not occurred.

In sum, given *Hirmer,* we simply do not accept that the Arizona Supreme Court would become the first court in the nation to recognize an employer's right of recovery against a tortfeasor for damages caused by an injury to an employee. We further do not believe that the district court abused its discretion by not certifying this issue to the Arizona Supreme Court.

GM also argued that Arizona's wrongful death statute preempted this cause of action. Because of *Hirmer,* the district court did not pass upon this issue and neither do we.

For the above reasons, we AFFIRM the district court's well-reasoned opinion AFFIRMED.